FRANK A. JOHNSON vs. NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY & another.

Suffolk. January 20, 1914. — February 28, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Carrier,* Of goods: limitation of liability. *Bill of Lading. Agency.*

Where a stipulation, limiting the liability of a railroad corporation for loss of goods to a valuation of $10 for each one hundred pounds in consideration of a lower freight rate, is stamped in red ink with a rubber stamp on the bill

of lading by the freight agent of the railroad corporation over the signature of the shipper, who signed the bill of lading with a blank left for the freight rate, and the freight agent then delivers the bill of lading so stamped to the teamster of the shipper and receives from the teamster the goods for transportation and also the money for the reduced charge, which was furnished to the teamster by the shipper for that purpose after he was informed that the reduced rate was charged in consideration of the limitation of liability, and where the shipper receives from the teamster the bill of lading and keeps it without any protest until after the goods are lost, the shipper is bound by the acts of the teamster of which he accepted the advantage; and it does not matter that the teamster was not capable of reading the stipulation for limited liability stamped on the bill of lading and that the shipper himself did not read it until after the loss had occurred.

CONTRACT OR TORT, against the New York, New Haven, and Hartford Railroad Company and the Boston and Maine Railroad, for the loss of five cases of household goods shipped by the plaintiff from Mansfield to Newburyport. Writ in the Municipal Court of the City of Boston dated October 1, 1912.

In the Municipal Court the case was tried before *Murray,* J. The facts as stated in his report were as follows:

The plaintiff hired a teamster named Paledino, who was practically an illiterate person, although able to speak English sufficiently well to testify in English, to take the plaintiff's household goods from his house in Mansfield to the defendant's station in that town. The plaintiff, in addition to the goods, gave the teamster bills of lading, written and signed by the plaintiff as "shipper." The teamster delivered the household goods and the bills of lading to the agent of the defendant New York, New Haven, and Hartford Railroad Company in charge of its station at Mansfield. This agent refused to transport the goods unless the freight thereon was prepaid and requested the teamster to bring a stated amount of money for that purpose. The goods and bills of lading were left with this agent of the said defendant while the teamster went to the plaintiff and obtained from him the amount of money demanded by the agent and paid it to him. The said defendant's agent before finally returning the bills of lading to Paledino put thereon a stipulation printed in red ink by means of a rubber stamp, wherein the said defendant, in consideration of a lower rate of freight paid, limited its liability in case of loss of the goods to $10 per one hundred pounds. The said defendant's agent did not, at the time of returning the bills of lading, explain to the teamster

the contents or object of the stipulations printed by the rubber stamp, and nothing was said to the teamster about "limited liability," nor was any greater sum requested by the agent of the said defendant for the prepayment of the freight charges, and it was admitted at the trial by the defendants that the words printed by the rubber stamp were inserted in the bills of lading above the signature of the plaintiff without his actual knowledge. The words added by the rubber stamp were inserted in the bills of lading after the delivery of the goods, and at the time of the prepayment of the freight to the said defendant. The teamster received the stamped bills of lading without reading them and without any offer from the defendant's agent to read them to him and handed the bills of lading to the plaintiff, who did not know of the use of the rubber stamp until after the loss occurred. The plaintiff received the shipment at the station of the defendant Boston and Maine Railroad at Newburyport, short of five cases, the actual value of which was $350.

The words printed in red ink, which were added to the bills of lading by the rubber stamp, were as follows:

"Restricted valuation for household goods.

"The rate of freight is based on the specified valuation of $10.00 per 100 lbs., and in consideration of this rate the consignor agrees that in the event of loss of, or damage to this property or any part thereof, from causes which make the carrier liable, such liability shall not in any case exceed in amount $10.00 per 100 lbs.

"......................Consignor."

Upon the question whether the plaintiff had knowledge of the railroad charges for the carrying of freight, there was a conflict of testimony. The defendant New York, New Haven, and Hartford Railroad Company offered testimony of a conversation by telephone of its agent at Mansfield with the plaintiff who called up the agent before sending the goods for shipment and asked what "the cost would be" from Mansfield to Newburyport, and was told that the rate would be twenty-five cents per one hundred pounds, if released to a valuation of $10 per one hundred pounds, and that no reply was made thereto. It further appeared in evidence that the plaintiff frequently had had freight transported

over the lines of the defendant New York, New Haven, and Hartford Railroad Company.

The plaintiff testified that he did not recall that the agent quoted any rate to him; but shortly after the conversation the goods were received at the station at Mansfield for shipment. The judge found upon this evidence that the plaintiff was informed beforehand by said defendant's agent of the limited liability rate.

At the close of the evidence the plaintiff asked the judge to make the following rulings:

"1. On the whole evidence the plaintiff is entitled to recover the full amount of his loss sustained as testified to by the plaintiff and Mrs. Johnson.

"2. That the bill of lading is a contract between the plaintiff and the defendant without the limitation subsequently inserted by the defendant after the delivery of the goods to it and without his knowledge and consent.

"3. That the teamster Paledino had no authority to bind the plaintiff by receiving the bill of lading from the defendant in the changed form, i. e. with a rubber stamp limiting the liability as expressed thereon.

"4. That the limitation inserted in said bill of lading without the knowledge and consent of the plaintiff is null and void and is not binding upon him.

"5. That from the facts in this case and circumstances, such a limitation as to liability is not fairly made and is evasive.

"6. That the defendant Boston and Maine Railroad was negligent in handling freights shipped to its terminal at Newburyport, Mass., without supplying agents or servants in handling the goods and in allowing teamsters to take what they desired without comparing their takings with the bills of lading or freight bills.

"7. That an agreement between a common carrier and a shipper limiting responsibility on behalf of the common carrier must be assented to clearly and unequivocally by the shipper and the terms under which the carrier proposes to carry the goods, must be adopted as a contract between the parties with full knowledge brought home to the shipper."

The judge refused to make these rulings, and made instead the following rulings, which were requested by the defendants:

"3. The plaintiff is bound by the acts of his agent Paledino.

"4. The plaintiff is bound by the acts of his agent Fellows." [No such person is mentioned in the record.]

"6. The goods in question were shipped under a contract proving that their value should be released to $10 per one hundred pounds.

"7. The contract providing for a released shipment is a valid contract and is binding upon the plaintiff.

"8. If the court finds that the plaintiff is entitled to recover for the failure of the defendant Boston and Maine Railroad to deliver the plaintiff's goods to the plaintiff or his agent, in that event the plaintiff cannot recover as damages at a greater value than $10 per 100 pounds.

"9. The plaintiff cannot assert the invalidity of the bills of lading offered in evidence."

The judge found for the plaintiff in the sum of $50 against the defendant Boston and Maine Railroad, and found for the defendant New York, New Haven, and Hartford Railroad Company. At the request of the plaintiff he reported the case to the Appellate Division under St. 1912, c. 649, § 8.

The Appellate Division made an order that the report be dismissed; and the plaintiff appealed.

*H. Loewenberg,* for the plaintiff.

*A. W. Blackman,* for the defendants, was not called upon.

DE COURCY, J. A reasonable agreement limiting the amount recoverable in case of loss or damage to a specified value, and made for the purpose of obtaining the lower of two rates proportioned to the extent of the risk, is valid and binding on both shipper and carrier. *Graves* v. *Lake Shore & Michigan Southern Railroad,* 137 Mass. 33. *Bernard* v. *Adams Express Co.* 205 Mass. 254. *New England News Co.* v. *Metropolitan Steamship Co.* 215 Mass. 252. *Adams Express Co.* v. *Croninger,* 226 U. S. 491. Such an agreement was embodied in the bills of lading in this case.

Among the facts stated in the report of the Municipal Court are the following: When the plaintiff sent his teamster Paledino with the goods to the freight station, he sent with him also the bills of lading without inserting the rate therein. The plaintiff frequently had sent freight over the lines of the defendant company; and he was informed by the defendant's agent of the limited

liability rate before he sent the goods for shipment. When Paledino was informed of the amount necessary to prepay the freight at the reduced rate, he communicated that information to the plaintiff and obtained from him the money, which he paid to the freight agent. The plaintiff later received from Paledino the returned bills of lading, with the "limited liability" clause stamped thereon, and he kept the same without any protest until after the loss occurred. In view of these facts no error of law is shown in the finding for the defendant.

The plaintiff entrusted Paledino with the goods, the bills of lading and the money, and empowered him alone to make all the necessary arrangements with the defendant for the transportation. He must be deemed to have given this agent authority to act on his behalf in reference to this shipment, and to bind him by the receipt of the bills of lading as issued. *Squire* v. *New York Central Railroad,* 98 Mass. 239. *Hill* v. *Boston, Hoosac Tunnel, & Western Railroad,* 144 Mass. 284.

Further, even if the plaintiff had not authorized Paledino to make the agreement for limited liability, it could be found that he ratified his agent's act. He accepted the contract and availed himself of its provisions without objection. The stipulation in question was one he had reason to expect, and was inserted in a manner not likely to escape his attention. The mere fact that he was willing to assent to the terms of the bills of lading without reading them cannot deprive the defendant of the benefit of the stipulation inserted therein for its protection. *Cox* v. *Central Vermont Railroad,* 170 Mass. 129, 137. *Monitor Mutual Fire Ins. Co.* v. *Buffum,* 115 Mass. 343. *Grace* v. *Adams,* 100 Mass. 505.

*Order dismissing appeal affirmed.*