DANIEL L. MCKINNEY & others *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    January 21, 1914. — March 3, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Carrier,* Of goods: limitation of liability.   *Bill of Lading.   Contract,* In writing.
    *Agency.*

Where the agent of a person shipping a horse for transportation by rail, who was described in the bill of lading as the "shipper's agent," could not read nor sign his name, and his signature to the bill of lading as shipper's agent was made "by his mark," which was witnessed by the carrier's agent who received the horse for transportation, and where the shipper's agent testifies that the carrier's agent did not read the bill of lading to him "or say anything about it and asked no question as to whether he wanted the high rate or the low rate; that he didn't know whether the rate which he had was the high rate or the low rate," and there is no evidence that the duplicate of the bill of lading given to the shipper's agent ever reached the shipper or the consignee, neither the shipper nor the consignee *is bound as matter of law by a stipulation* contained in the bill of lading limiting the carrier's liability to $100 in consideration of the reduced rate of the freight charge.

LORING, J.   The plaintiffs in this action had a verdict in the sum of $300 for negligence in the transportation of a horse from Newburyport to Boston.   The horse was shipped at Newburyport by a servant of a third person (one Herlihy by name) who shipped the horse to the plaintiffs in their behalf.   Herlihy testified that he could not read nor "sign his name."   The defendant produced a contract or bill of lading signed "John Herheley, Shipper, By His mark, Shipper's Agent F. W. Russell Witness."   The words "Shipper," "By," "Shipper's Agent," and "Witness" were printed words in a blank used by the defendant in case of the shipment here in question.   The other words were written.

Herlihy further testified that he delivered the horse to "Russell, one of defendant's agents, for shipment to the defendants." We assume that "defendants" is a misprint for plaintiffs. In addition Herlihy testified that at this time he made his mark on two papers, one of which the defendant's agent Russell kept and the other Russell gave to him; that he did not know what he did with the paper which Russell gave him, on which he made his mark; he did not know whether he kept it in his pocket or "put it in the office" of his employer, who was shipping the horse to the plaintiffs. He further testified "that Russell did not read over the live stock contract to him or say anything about it and asked no question as to whether he wanted the high rate or the low rate; that he didn't know whether the rate which he had was the high rate or the low rate." It was the contention of the defendant that by the terms of the contract or bill of lading the consignee in consideration of the rate of freight charged agreed that the valuation of the horse was to be $100, and that beyond that valuation it (the carrier) was not to be liable in any event.

On this evidence the defendant asked the presiding judge * to rule that "by virtue of the terms of the contract under which this shipment moved, the plaintiffs cannot recover . . . more than $100 in any event." This the judge refused to do; and by the terms of the report, if this was wrong, and if a part of the charge excepted to was wrong, "the verdict is to be limited to $100." This we construe to mean that in that event judgment is to be entered for the plaintiffs in the sum of $100; "otherwise the above verdict of $300.00 is to stand."

It is plain that the plaintiffs were entitled to the full damage done to the horse unless the shipper in behalf of the plaintiffs had entered into a special contract limiting the defendant's liability.

It is settled: (1) That a special agreement between a shipper and a carrier by which in consideration of the rate charged the value of the property shipped is agreed upon in case of injury or loss, is valid. *Squire* v. *New York Central Railroad,* 98 Mass. 239, 245. *Graves* v. *Adams Express Co.* 176 Mass. 280. *John Hood Co.* v. *American Pneumatic Service Co.* 191 Mass. 27, 29. *Johnson* v. *New York, New Haven, & Hartford Railroad, ante,* 203.

---

* *White,* J., who reported the case for determination by this court.

(2) That one who receives from a common carrier a bill of lading which purports on its face to set forth the terms of carriage, and accepts and acts upon it, without objection, ordinarily will be presumed as in other cases of contract, in the absence of fraud or other sufficient excuse, to have assented to its terms, as far as the provisions therein contained are lawful and not opposed to public policy. *Grace* v. *Adams*, 100 Mass. 505. *Cox* v. *Central Vermont Railroad*, 170 Mass. 129. *Graves* v. *Adams Express Co.* 176 Mass. 280. *John Hood Co.* v. *American Pneumatic Service Co.* 191 Mass. 27. *Johnson* v. *New York, New Haven, & Hartford Railroad, ante,* 203. (3) That an agent or servant who has charge of making the shipment is authorized to enter into a special agreement as to the terms of the shipment. *Hill* v. *Boston, Hoosac Tunnel, & Western Railroad*, 144 Mass. 284. *Johnson* v. *New York, New Haven, & Hartford Railroad, ante,* 203. (4) That a person who signs a written instrument as the contract between him and another cannot show that he did not know its contents "because of his limited intelligence and inability to read our language." *Atlas Shoe Co.* v. *Bloom*, 209 Mass. 563. For similar cases see *Hawkins* v. *Hawkins*, 50 Cal. 558; *Williams* v. *Stoll*, 79 Ind. 80; *Weller's Appeal*, 103 Penn. St. 594; *Deering* v. *Hoeft*, 111 Wis. 339; *Chicago, St. Paul, Minneapolis & Omaha Railway* v. *Belliwith*, 83 Fed. Rep. 437; *Lauze* v. *New York Life Ins. Co.* 74 N. H. 334.

It was held in *Jones* v. *Cincinnati, Selma & Mobile Railroad*, 89 Ala. 376, that the effect of the acceptance of a bill of lading by a shipper without objection is not affected by the fact that the shipper could not read nor write. To the same effect see *Missouri, Kansas & Texas Railway* v. *Patrick*, 144 Fed. Rep. 632, 634, and *Schaller* v. *Chicago & Northwestern Railway*, 97 Wis. 31, 42. In these cases the carrier did not know that the shipper was an illiterate person.

Where the shipper signs the bill of lading the carrier has a right to assume that he can read and that he understands what he has signed and so assents to the terms of the writing as a contract. As a matter of business fairness it is not open to the shipper in such a case to show that he did not read the bill of lading or that he could not understand its terms. In such a case the doctrine of *Atlas Shoe Co.* v. *Bloom, ubi supra*, applies. The carrier has the right to make the same assumption when a shipper who cannot

read or write accepts a receipt containing the terms of the contract of carriage without disclosing the fact that he is an illiterate. person.   Here the doctrine of *Grace* v. *Adams* and *Cox* v. *Central Vermont Railroad* applies.   But where the shipper tells the carrier that he cannot read or (as in the case at bar) that fact is otherwise brought home to the carrier's knowledge, there is nothing which gives the carrier a right to make any assumption. In such a case, the question whether a contract (limiting the carrier's liability) has or has not been made depends upon the fact of the shipper's having in fact known and agreed to it.

In the case at bar the fact that the shipper's servant was an illiterate person was brought home to the carrier by the fact that the servant executed the bill of lading by making his mark, and the further fact that the agent who acted for the carrier in arranging for the shipment witnessed the mark so made.   Further the shipper's servant testified that the carrier's agent "did not read over the live stock contract to him or say anything about it and asked no question as to whether he wanted the high rate or the low rate; that he did n't know whether the rate which he had was the high rate or the low rate."   And lastly, there was no evidence that the bill of lading ever reached the shipper or the plaintiffs, and so there was no evidence that it was acted upon as the contract under which the horse was accepted by the carrier. It is to be noted that the duplicate original of the bill of lading put in evidence was produced by the defendant.

The presiding judge was right in refusing to rule under these circumstances that as matter of law the shipper in behalf of the plaintiffs had entered into a special contract with the carrier limiting its common law liability.

In accordance with the terms of the report the verdict is to stand; and it is

*So ordered.*

The case was submitted on briefs.

*A. R. Tisdale,* for the defendant.

*F. M. Carroll & L. E. Flye,* for the plaintiffs.