GEORGE COSTONIS *vs.* MEDFORD HOUSING AUTHORITY.

Suffolk.    March 6, 1961. — June 30, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract*, Modification, Waiver, Building contract. *Agency*, Scope of authority or employment. *Waiver*. *Housing*. *Corporation*, Housing authority. *Evidence*, Relevancy and materiality. *Practice, Civil*, Exceptions: general exception. *Words*, "Administer."

In an action for work done by the plaintiff for the defendant, a Housing Authority, pursuant to an alleged modification of a written contract for painting the concrete foundations of a housing development, evidence that the written contract called for the application "by spray" of paint conforming to Federal specification, and that the defendant's executive director required the plaintiff to apply instead a brand name paint which did not appear in nor meet the requirements of such specification and could not be sprayed, to use an additive for better adhesion, and "to get started on the job," and stated that, if the plaintiff's contention that he was not obligated to use the paint required by the executive director was right, "a change order would be forthcoming and . . . [the plaintiff] would be compensated," warranted a finding that the written contract had been modified orally if the executive director had authority to modify it. [113]

A finding that the executive director of a Housing Authority had apparent authority orally to waive a provision of a painting contract between the Authority and a painter that "No change in the work shall be undertaken, nor shall any claim for extra work be valid, unless such change in the work be done in pursuance of a written order of the Authority," and to order a change in the work and extra work by the painter, was warranted by evidence of authority to "administer" the contract given by the Authority under G. L. c. 121, § 26N, to the director, who was ex-officio secretary of the Authority and acted as its spokesman, and of acts of the director with respect to the contract. [114–115] WHITTEMORE, J., with SPALDING & CUTTER, JJ., dissenting.

In an action against a corporation for additional work done by the plaintiff pursuant to an alleged oral modification of a written contract, there was no merit in an exception by the defendant to the admission, over its general objection, of certain evidence bearing on the issue of such modification. [116]

TORT OR CONTRACT. Writ in the Superior Court dated April 2, 1959.

The action was heard by *Tomasello, J.*

The case was argued in March, 1961, before *Wilkins, C.J., Williams, Whittemore, Cutter, & Spiegel,* JJ., and afterwards was submitted on briefs to *Spalding* and *Kirk,* JJ.

*John S. Ahern,* for the defendant.

*Robert D. O'Leary,* (*Abraham H. Kahalas* with him,) for the plaintiff.

SPIEGEL, J. In this action of tort or contract the plaintiff seeks to recover a balance of $1,687 under a painting contract made with the defendant (ten per cent of the contract price withheld), and the sum of $4,464 for additional work requested by the defendant.

There are three counts in the plaintiff's declaration: one in tort for deceit, the second for such balance and for the value of the additional work, and the third on an account annexed. The judge in the Superior Court found for the plaintiff in the sum of $6,701.50, which included interest.

We summarize the facts as favorably for the plaintiff as the judge could have found them on the evidence.

The defendant is a "Housing Authority" created under G. L. c. 121, § 26K. Through its executive director, Gerald A. Palumbo, invitations for bids for exterior painting work on the "Riverside Avenue Housing Development" were

issued. The work was to consist of repainting surfaces. The specifications called for the contractor to ''Provide all labor, materials, equipment, and services necessary for and incidental to the preparation of the exterior surfaces of the thirty-one buildings and appurtenances thereto, constituting the Riverside Avenue Housing Development, the application by brush of one (1) primer and one (1) finish coat of prepared paint to the wooden surfaces, the application by brush of one (1) primer and one (1) finished coat of prepared paint to the metal surfaces; and the application *by spray* of one (1) primer coat of cement paint and one (1) finish coat of acrylic (solvent type) paint to the concrete foundation walls, steps and porches'' (emphasis supplied). The section of the specifications entitled ''Materials'' states: ''Paint, exterior, for concrete foundations, steps, porches, etc., shall be cement-water, powder paint, best grade, conforming to Federal Specification TT–P–21, dated 6/30/41, Type I, Class B, and shall be free of lime other than that contained in the Portland cement itself.''

The plaintiff submitted a bid in the sum of $16,873 which was accepted and a contract was executed between the plaintiff and the defendant under date of June 10, 1958. The plaintiff received a ''notice to proceed'' dated July 23, 1958, from the defendant through its executive director, Palumbo. This notice contained the following statement: ''You are informed that Mr. Gerald A. Palumbo has been appointed Contracting Officer and that he is duly authorized to administer your Contract for and in the name of the Medford Housing Authority.'' This notice indicates that copies thereof were sent to the Medford Housing Authority and the State Housing Board. On July 25, 1958, Palumbo wrote a letter to the plaintiff which read in part: ''I must state that I shall look to you as the Contractor; and I shall expect that you will assume all responsibilities inherent with that position to include any and all discussions that may arise in connection with the administration of the Contract. . . . Therefore, I shall expect to conduct all business with you directly.''

Palumbo "told . . . [the plaintiff] to use Easy Mix and Silasheen as the materials for the foundation work under the Contract." The brand names "Easy Mix" and "Silasheen" do not appear in the specifications. "Easy Mix" could not be sprayed as was permitted by the terms of the contract and did not meet the requirements set out by the "materials" section of the specifications. When the plaintiff made his objections to using "Easy Mix" or "Silasheen" known to Palumbo he was told "to get started on the job, and take exception to the foundation work." "Palumbo stated that he would see about submitting the matter to the State Housing Board at a later date, and if he (the plaintiff) was right in his claim that he did not have to use Easy Mix a change order would be forthcoming and . . . [the plaintiff] would be compensated." Palumbo directed him to use "Easy Mix" on the foundations and granted him permission to use an additive with the "Easy Mix" to obtain better adhesion to the previously painted surfaces. The plaintiff's estimation of the fair value of the additional work necessitated by the application of "Easy Mix" to the foundations was $4,464.

The contract recites that "No change in the work shall be undertaken, nor shall any claim for extra work be valid, unless such change in the work be done in pursuance of a written order of the Authority, approved by the [State Housing] Board, specifically stating the character and conditions of the change and the amount by which the Contract Price and/or Contract Time for completion is to be adjusted. . . . When determining the value of any change, either additive or subtractive, the contracting parties are restricted to the following method: The contracting parties shall negotiate and agree upon the equitable value of the change prior to issuance of the order and the order shall stipulate the corresponding lump-sum adjustment of the Contract Time."

A letter was written by the director of the State Housing Board to the chairman of the defendant housing authority dated March 24, 1959, in which the following language

appears: "As you know, we held a lengthy conference in this office on February 12th at which representatives of your Authority were present, representatives of the painting contractor, and representatives of the State Housing Board, including Mr. Dobrowski, Assistant Attorney General assigned to our office. During this conference statements were made by both sides indicating to the representatives of the State Housing Board that there seemed to be a misinterpretation of the specifications on the part of the painting contractor and representatives of your Authority. As a result, work was done beyond what was called for in the contract. The three thousand dollar figure was arrived at because facts brought out at the hearing indicated that the painter spent an additional $2,300 for material that would not have been purchased if this additional work was not done. The painting contractor also stated that it took considerable more time to apply the type of material used than normally would have been spent had they used a spray gun, as originally intended."

At the close of the evidence the defendant presented nine requests for rulings which were denied for reasons given by the judge. The defendant excepted to the "rulings and findings" made by the trial judge and to the admission of certain evidence.

The trial judge based his general finding for the plaintiff and his denials of the defendant's requests for rulings on his special findings that the written contract was modified orally by the defendant through its contracting officer, Palumbo, and that Palumbo had "authority . . . by implication" so to modify the written contract. Therefore, a decision on the propriety of the trial judge's special findings will serve to answer the defendant's exceptions to the denial of its requests for rulings and to the general finding for the plaintiff. The rule to be applied is that "The general and special findings of the judge in an action at law are to stand if warranted in law upon any possible view of the evidence." *Treasurer & Recr. Gen.* v. *Macdale Warehouse Co.* 262 Mass. 588, 592.

"It is settled that ordinarily a written contract, before breach, may be varied by a subsequent oral agreement made on sufficient consideration. Such a subsequent oral agreement may enlarge the time of performance, or may vary any other term of the contract, or may discharge it altogether. This rule applies to both sealed instruments and simple contracts." *Zlotnick* v. *McNamara,* 301 Mass. 224, 225–226. Testimony that Palumbo directed the plaintiff to apply "Easy Mix" to the foundation walls and that "Easy Mix" did not qualify as a proper material under the specifications and could not be sprayed on as was provided by the contract warranted the trial judge's finding that the contract had been modified. There was consideration to support the modification. *E. Van Noorden Co.* v. *Hartford Roofing & Sheet Metal Co. Inc.* 336 Mass. 676, 677–678.

The authority of an agent is a question of fact, "the answer to which depends upon the inferences to be drawn from a variety of circumstances relating to the conduct of the apparent agent, and whether the circumstances are such as to warrant persons dealing with him, in the exercise of reasonable prudence and discretion, to believe he has authority to represent the alleged principal in regard to the transaction in question." *Lord* v. *Lowell Inst. for Sav.* 304 Mass. 212, 214. *Bond Pharmacy, Inc.* v. *Cambridge,* 338 Mass. 488, 491.

A housing authority has the contracting powers of a private corporation. See *Johnson-Foster Co.* v. *D'Amore Constr. Co.* 314 Mass. 416, 419; *Opinion of the Justices,* 322 Mass. 745, 752. It is "liable in contract or in tort in the same manner as a private corporation." *Ryan* v. *Boston Housing Authy.* 322 Mass. 299, 300.

The contract provision requiring a written order of the Authority before any change in the work be undertaken or any claim for extra work be valid might be waived.

"The provision of the written contract that 'no charge for extra work will be honored and paid unless the owner shall order same by a writing directed to the contractor stating the nature of the work to be performed and the sum

to be paid therefor' obviously could not prevent oral contracts for extra work, for the parties had power to waive or alter that provision orally at any time." *Zarthar* v. *Saliba,* 282 Mass. 558, 560.

"Evidence relating to the oral modification of the contract by the parties was rightly admitted notwithstanding its provision that none of its terms may be altered or waived except by written instrument." *Staples Coal Co.* v. *Ucello,* 333 Mass. 464, 468. See *Blair* v. *National Reserve Ins. Co.* 293 Mass. 86, 88.

The name "Gerald A. Palumbo Executive Director" was the only one appearing on the letterhead of the Authority; his is the only name appearing on the "Invitation for Bids"; the "Invitation for Bids" was made a part of the contract; Palumbo drafted the "Specifications" which was also made a part of the contract; he made inspections while the work was in progress; he was the "Contracting Officer" with authority "to administer the Contract for and in the name of the Medford Housing Authority"; he was the man the plaintiff spoke to about the materials to be used on the job; he was the man who wrote and signed all correspondence directed to the plaintiff from the Authority.

It would not be unreasonable for the trial judge to conclude that Palumbo being authorized to "administer" the contract and being ex-officio secretary of the Authority and acting as its spokesman had extensive apparent authority to agree to a change in the work without a written order. See *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 226.

The word "administer" is one susceptible of a very broad interpretation. In *Fluet* v. *McCabe,* 299 Mass. 173, at page 179, it was said that "[t]o 'manage' is to control and direct, to *administer,* to take charge of . . ." (emphasis supplied). The phrase in G. L. c. 121, § 26K, "Whenever a housing authority determines . . . that it has no property to *administer* . . ." (emphasis supplied) would indicate that the word "administer" includes all the powers that public housing authorities exercise over property in their control.

Under G. L. c. 121, § 26N,[1] the Authority could delegate to Palumbo such powers and duties as the Authority deemed necessary and proper. He was delegated authority to "administer" the contract. " 'Unless otherwise agreed, authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it.' " *Beit Bros. Inc.* v. *Irving Tanning Co.* 315 Mass. 561, 566. *MacDonald* v. *Gough,* 326 Mass. 93, 97.

An individual in charge of a transaction has been held to have broad apparent authority (see *Johnson* v. *New York, N. H. & H. R.R.* 217 Mass. 203, 208; *McKinney* v. *Boston & Maine R.R.* 217 Mass. 274, 276; *England Bros. Inc.* v. *Miller,* 274 Mass. 239; cf. *Desrochers* v. *Brady,* 299 Mass. 269) " [a]nd what he has done in the ordinary course of transacting his principal's business and the title he has been permitted to use are admissible to prove the scope of his authority." *Segal* v. *Allied Muts. Liab. Ins. Co.* 285 Mass. 106, 109.

There is an analogy of a housing authority to a municipal corporation because of the statutory and public responsibilities of its members. Delegations of authority or acts tending to establish apparent authority by such a public body should be scrutinized with great care by any trier of facts.

In view of the various acts of the Authority and Palumbo set forth above and the cumulative effect of these acts we cannot say that the trial judge could not reasonably find that Palumbo had apparent authority to waive the provisions of the written contract and to order extra work.

---

[1] "A housing authority shall elect from among its members a chairman and a vice-chairman, and may employ counsel, an executive director who shall be ex-officio secretary of the housing authority, a treasurer who may be a member of the authority and such other officers, agents and employees as it deems necessary or proper, and shall determine their qualifications, duties and compensation, and may delegate to one or more of its members, agents or employees such powers and duties as it deems necessary or proper for the carrying out of any action determined upon by it. So far as practicable, a housing authority shall make use of the services of the agencies, officers and employees of the city or town in which such an authority is organized and such city or town shall, if requested, make available such services."

The defendant excepted to the admission in evidence of a conversation between the plaintiff and Palumbo and others, and of letters written by third persons, concerning the merits of the plaintiff's claim for extra compensation. This evidence was competent for the purpose of showing an oral modification of the contract. Since it was competent for this purpose and the exceptions thereto were general, they are without merit. *Del Visco* v. *General Elec. Co.* 235 Mass. 415, 417. *Irving* v. *Goodimate Co.* 320 Mass. 454, 460.

*Exceptions overruled.*

WHITTEMORE, J. (with Spalding, J., and Cutter, J.) dissenting. The evidence, we submit, does not support the conclusion that Palumbo had apparent or implied authority to modify the contract. In determining the authority of such an agent the rules for State and municipal contracts should be applied. On the facts, however, even under the rules applicable to a private corporation the Authority would not be bound by an attempt by Palumbo to change the contract. Furthermore, the evidence does not show that Palumbo attempted to modify the contract to permit the plaintiff to recover without a written change order.