CHARLES R. GOLDSTEIN vs. MYRON. WIDETT.[1]

Suffolk. March 4, 1971. — June 30, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & BRAUCHER, JJ.

*Contract,* Modification, Contract to transfer stock. *Accord and Satisfaction. Value. Damages,* For breach of contract to transfer stock.

Warranted findings by the trial judge in a suit in equity supported a conclusion that a written promise of the defendant to transfer to the plaintiff twenty-five per cent of the stock of two corporations to be formed to develop certain parcels of land, given in consideration of an interest free short term loan, was still in existence unmodified about four years later when the plaintiff commenced the suit where it appeared that one of the corporations was not formed until nearly three years after the promise, that full repayment of the loan, with interest, was made about three years after the promise, and that twice the plaintiff agreed to accept a small sum in satisfaction of his claim to the stock upon the receipt of certain monies by the defendant, which were received, but the defendant never paid that sum nor requested an extension of time for doing so. [128–132]

Where the only evidence at the trial of a suit in equity as to the value of closely held stock of two corporations formed to develop certain parcels of land, a twenty-five per cent interest in which the defendant had promised to transfer to the plaintiff, was furnished by an agreement executed more than four years after. such promise whereby the defendant agreed to sell his interest in the corporations to a construction company, the judge properly used the purchase price specified in such agreement as the basis of his determination of the value of the stock. [132–133]

BILL IN EQUITY filed in the Superior Court on March 30, 1967.

The suit was heard by *Smith,* J., at three trials.

---

[1] Two other defendants originally in the case were eliminated therefrom by paragraph 3 of a final decree entered on June 19, 1970, dismissing the bill as to them, thus leaving Mr. Widett the sole defendant. He will be referred to as the defendant throughout this opinion.

*Benjamin Goldman* for the plaintiff.

*Morris M. Goldings* for the defendant.

REARDON, J.  This case, in which the plaintiff originally sought conveyance to him of certain stock but now asks only damages, is before us for the second time.  After the first trial, in May, 1967, the trial judge entered a final decree on July 13, 1967, denying specific performance "as a matter of discretion" and awarding damages in the amount of $5,400.  Testimony at that trial was largely confined to evidence as to an alleged agreement of January 7, 1963, on which the plaintiff based his suit and as to subsequent actions of both parties relative to it.  Little evidence was introduced as to the value of the stock involved.  The plaintiff appealed to this court from the final decree of July 13, 1967.  On March 14, 1968, we reversed it and remanded the case for further proceedings before the trial judge, on the basis of which he was to make detailed findings of fact on several specified matters.  Those which are still relevant in light of the plaintiff's abandonment of his claim for specific performance are, in substance, whether the January 7 agreement has been modified and, if so, in what respects; whether there was a breach of the agreement as modified (if modified); what is the basis for any finding of damages; and what are the principles of valuation used in determining the value of the stock named in the agreement.

The case was heard twice on remand, on July 19, 1968, and July 24, 1969.  At these hearings there was substantial testimony, supported by ample documentation, as to the sale of the stock in question by the defendant as part of a larger transaction after a long series of negotiations.  These negotiations had begun well before the first trial but were not mentioned by the defendant at that time.  Based on the evidence presented at all three trials the trial judge made lengthy findings of fact, culminating in an award to the plaintiff of $52,060.12, the total of the value of the stock promised to the plaintiff in the contract of January 7, 1963, as found by the judge, and interest.  Among other findings of fact the judge found that the defendant had executed

two purchase and sale agreements and had turned to the plaintiff for a loan of $16,000 to finance part of them. Without elaborating on unnecessary details, it suffices to say that the plaintiff made the loan and that on January 7, 1963, a writing was executed by the defendant which provided inter alia that "[i]n consideration of your [Goldstein's] making the aforesaid advances, I agree that you shall have twenty-five (25%) per cent interest in any Corporation or Corporations set up to develop the land purchased under the Agreements with Village On The Hill, Inc. and Park Terrace, Inc. which shall be evidence with [*sic*] a transfer to you of twenty-five (25%) per cent of all shares or [*sic*] stock authorized and issued by the Corporations formed to develop said parcels of land."

After the hearings on remand the judge entered the final decree of June 19, 1970, which in paragraph 1 ordered the defendant to pay the plaintiff $52,060.12, in paragraph 2 ordered issuance of execution therefor, and, as previously noted (see fn. 1), in paragraph 3 dismissed the bill as to two of the original three defendants. Both parties have appealed from this final decree.

1. The defendant claims, first, that the plaintiff cannot now sue under the original January 7, 1963, agreement because it was modified by the parties so as to entitle the plaintiff to only $5,000 in addition to repayment of the loan. This conclusion is supported, it is claimed, by the judge's findings of fact on this subject, although the judge concluded from his findings that "the original agreement of January 7, 1963 . . . has been modified only to the extent of an extension of time for performance granted to Mr. Widett on three occasions."

The judge's conclusion might have been otherwise phrased but it incorporates a finding that the original promise to transfer stock is still in existence, entitling the plaintiff to damages equal to the benefit of his bargain. This conclusion, which is all that is necessary to the case, is in turn fully supported by the judge's findings of fact and the evidence presented. Where this evidence conflicted, the trial

judge believed the plaintiff, which he was entitled to do, especially since the documentary evidence before him strongly favored the plaintiff's version of events.

It was undisputed that the plaintiff lent the defendant a total sum of $16,266.75 to cover down payments on, and extensions of, two purchase and sale agreements entered into by the defendant on September 14, 1962, involving parcels of land in Brighton and Brookline, which the defendant planned to develop. In return for the loan he promised the plaintiff the stock interest defined and set out in the writing above. In addition, the agreement provided that the loan was to be short term, with payment contemplated either out of the defendant's father's estate or out of the proceeds of a mortgage with the F. H. A., whichever source materialized first. The agreement did not provide for payment of interest to the plaintiff, and the parties are in accord that none was contemplated.

Contrary to the terms of the agreement, the plaintiff was not fully repaid his loan until January, 1966. At that time he received $17,778.50, enough to cover an outstanding balance of $15,500, and six per cent interest calculated from August 7, 1963. On August 7, 1963, the defendant had paid the plaintiff $2,000. The plaintiff testified that it was understood between them that enough of the $2,000 was to be allocated to principal to reduce it to $15,500. The rest was to be allocated to interest. Since interest to that date, calculated at six per cent, was only about $600, the defendant paid the plaintiff a total of about $600 more than the interest due.

Payment of the loan was not made according to the agreement because, as might be expected, when it became apparent that the defendant could not abide by its terms and that the loan would not be immediately paid back, the plaintiff, who had himself borrowed the money he had lent the defendant, began to negotiate with the defendant for reimbursement with interest. The defendant blamed a variety of unforeseen setbacks for his inability to pay back the loan but assured the plaintiff it would be repaid. It

is clear that at this point the plaintiff was not worried so much about the profit he had expected to accrue to him under the agreement as about recouping the loss he was presently suffering. On April 24, 1963, before either land purchase had been consummated, he offered by letter to relinquish assignments to him of the purchase and sale agreements if the defendant would pay him back his loan with interest by June 30, 1963. Nothing came of this offer. The plaintiff testified that in January, 1966, when the parties agreed on the total to be repaid to him on his outstanding balance, he agreed to release his claim to the twenty-five per cent stock interest under the agreement if the defendant would pay him $5,000 when current negotiations with the F. H. A. were consummated. From the small sum he was willing to accept in satisfaction, one might infer that the plaintiff was disenchanted with the defendant and his ventures, and that the prospect of investment in them no longer seemed attractive. When the F. H. A. financing went through, however, the defendant claimed he did not have enough money to pay the $5,000. There was evidence that he promised he would pay it when a pending claim against the Massachusetts Turnpike Authority was settled. The plaintiff accepted this offer. The sum of $102,505.01, with costs, was recovered on the claim against the Authority in late January, 1967. The plaintiff, hearing of this recovery, wrote the defendant asking for payment of his $5,000, but the defendant did not reply. Subsequently, on March 21, 1967, the plaintiff for the first time demanded in writing transfer to him of a twenty-five per cent stock interest in Sargent Estates, Inc. (Sargent) and Village Manor Trust (Village), which had been formed to develop the Brookline and Brighton land respectively and of which the defendant owned sixty per cent and fifty per cent respectively. The defendant did not reply in writing but was evasive in subsequent conversation, leading the plaintiff to file this suit on March 30, 1967.

This pattern of events clearly reveals not a modification of the original agreement but something closer to repeated

proposed compromises of the plaintiff's claim against the defendant under the agreement. Negotiations did not begin until the defendant had broken the agreement, the plaintiff having fully performed his part. The subsequent arrangements cannot, therefore, be called modifications. See *Costonis* v. *Medford Housing Authy.* 343 Mass. 108, 113. Although the plaintiff concededly was willing to accept $5,000 in satisfaction of his claim to the twenty-five per cent stock interest, his original claim remains since the defendant never paid the plaintiff the $5,000 he promised. *Sherman* v. *Sidman,* 300 Mass. 102, 106. *Corrigan* v. *Payne,* 312 Mass. 589, 591–592. The defendant's contention that the plaintiff's original claim was extinguished by a later accord which remained entirely executory flies in the face of common sense. It scarcely needs saying that it is also contrary to the law.

The fact that the plaintiff as late as January, 1967, was willing to accept $5,000 in lieu of the twenty-five per cent stock interest under the agreement in no way indicates abandonment of his original claim but rather an admirable patience in awaiting the long delayed occurrence of the latest deadline worked out between him and the defendant for performance of their alternative arrangement. Nor does the interval from January, 1963, to March, 1967, indicate a lack of diligence on the part of the plaintiff in protecting his rights. The projects were much slower in getting started than the parties had anticipated — Sargent was organized in August, 1963, but Village did not exist until October, 1965. Thus the agreement as to transferring the stock interest could not have been performed until late in 1965. Furthermore, there was evidence that the plaintiff at all times was assured by the defendant of payment on the occurrence of some specified event. It was only after the last such event went by not only without performance by the defendant but without the defendant's seeking another extension of time for performance that the plaintiff finally brought suit. He cannot be criticized for his patience in the interim.

There is no inequity in allowing the plaintiff the benefit of his original bargain with respect to the promised shares, while at the same time allowing him to keep the interest and $600 more he was paid on his loan, neither of which was part of the original agreement. While the plaintiff could not reap the benefit both of an original bargain and a later one which was designed to supplant the first, he is not doing so here. The original agreement offered two attractive features to him as a creditor: immediate repayment of the loan and a twenty-five per cent investment in the enterprise. The plaintiff did not receive either. Instead of immediate repayment he accepted delayed payment with interest at six per cent. This rate is low enough so that we are not bothered by the $600 he received in addition, especially since that excess was specifically paid by the defendant as interest on the loan and in no way as a substitute for the promised shares. Instead of an investment in the enterprise, the plaintiff would have accepted $5,000, but since he did not receive it his original claim still stands. This claim is unaffected by the repayment of the loan with interest because that adjustment is allocable to another provision of the agreement which the defendant did not perform.

2. The judge's findings as to value, although they reveal a simple error in calculation, were clearly based on the selling price of the defendant's interests in Sargent and Village contained in an agreement dated June 1, 1967, by which the defendant's interests in these and other entities were sold to Lilly Construction Company (Lilly). Since the stock in Sargent and Village was closely held and the only evidence introduced as to value at the second and third trials was the purchase price of their stock in this sale, it was proper for the trial judge to use this as a basis. We have carefully examined the objections of both parties to the trial judge's determination, as well as other possible bases for value contained in estimates made in the negotiations between the defendant and Lilly prior to the June agreement and a revision upward of the price of Village stock made in September, 1967. We have concluded, how-

ever, that there is no warrant for revising the method employed by the trial judge. Accordingly, we go only so far as to correct his calculations. The figures in the June 1 agreement used as a basis by the trial judge were $140,000 for the defendant's sixty per cent interest in Sargent and $35,000 for the defendant's fifty per cent interest in Village. It follows that the value of one hundred per cent of the two entities was $233,333 and $70,000 respectively, and that the plaintiff's twenty-five per cent interest was worth $58,333 and $17,500 respectively. The plaintiff is thus entitled to an award in the amount of $75,833, with interest from January 24, 1967, the date of the breach as found by the trial judge.

The final decree of June 19, 1970, is modified by striking out paragraphs 1 and 2 and substituting therefor a new paragraph 1 ordering the defendant to pay to the plaintiff the sum of $75,833, with interest thereon from January 24, 1967, and a new paragraph 2 ordering issuance of execution accordingly; and as so modified the decree is affirmed with costs of appeal to the plaintiff.

*So ordered.*