Hershfang, J.
Samuel Nichols, Inc., a real estate brokerage firm, (“Nichols”), sued for a real estate sales commission under its "Exclusive Agreement to Sell” form (the Form). Without word to Nichols, defendants had sold their property to their neighbors, the Hanulas, about eleven months after Marcia Nichols had shown it to Mr. Hanula. Nichols says the agreement continues indefinitely after the first ninety days unless and until defendant gives thirty days prior written notice of termination. The trial judge found that Nichols had received and accepted oral notice of termination and had waived the need for written notice, and found for defendants. Nichols contends that insufficient evidence warrants the finding for defendants. We agree with the trial judge.
From the Report the following facts emerge:
Alexander T. Berte (Alexander), one of the defendants here, came into Nichols’ offices in Roslindale on or about July 20, 1985. Present at the time were Nichols’ employees, Samuel Nichols and Marcia Nichols, each a licensed real estate broker with at least fifteen years experience. Alexander listed with Nichols the property he owned with his wife, Joan Berte, at 576 South Street, Roslindale. Alexander then accompanied Samuel Nichols (Samuel) to the dwelling where Samuel, on a so-called listing card which appeared on the back side of the Form, made notations concerning the premises’ condition, its rent and its utilities’ costs. Samuel and Alexander then returned to Nichols’ office where Alexander signed the Form. Mrs. Berte signed it thereafter.
The Form, printed except for the addition of dates and numbers, is set forth in the margin.[2]
*38 The Form purports to establish three time periods. Payment of a 6 percent commission to Nichols is due on any sale effected during the first 90 days. The same 6 percent fee is due on any sale of the property within the following second 90 day period “to any person or firm to whom said property was recommended, shown or exhibited during the term hereof.” In the third time period following the one hundred eighty days, unless Nichols gets thirty days prior written notice the same 6 percent fee is to be due on a sale to any such person no matter when the sale is made.
Within the next approximately ten-twelve days following the signing of the agreement, Marcia Nichols showed the property to several of her customers. During that time Bogdan Hanula, a neighbor of the Bertes, expressed interest and Ms. Nichols twice showed the property to him. In early August, 1985 Ms. Nichols submitted offers to the Bertes, the highest being $120,000.00. She also included an oral offer from Mr. and Mrs. Hanula for a sum less than $115,000.00. The Bertes, who had listed the property with Nichols for a sale price of $130,000.00, declined all of these offers.
About twenty days after all this began, on August 9, 1985, Ms. Berte called Ms. Nichols and said the Bertes were taking the house off the market because they decided it would need certain repairs and they were having tenant problems. Ms. Berte’s brother was to move into one of the vacant apartments and help make those repairs. In their telephone discussion, Ms. Nichols encouraged the Bertes to list the property with Nichols when and if the Bertes decided to put it back on the market. As the trial judge expressly found, as a consequence of that telephone discussion, “Ms. Nichols agreed to take the property off the market ánd the plaintiff [Nichols] made no further attempts to sell this property.” About a year later, Nichols learned from a trade newspaper that the Bertes’house had been sold to the Hanulas for $120,000.00. The sale had taken place on July 14, 1986. Nichols filed suit, claiming an entitlement to a 6 percent commission on that $120,000.00 sale, or $7,200.00. The trial judge concluded the agreement had been terminated, the provision requiring written notice having been waived, and found for defendants, the Bertes.
Nichols timely filed four numbered requests for rulings, two of which were denied. It claimed to be aggrieved by the denial of those two requests, numbered #1 and #4, which read as follows:
1. On all the law and evidence, there must be a finding for the plaintiff because:
. A. The agreement entered into by and between the parties is a binding contract.
■B. There is consideration flowing from the plaintiff to the defendants.
C. The agreement entered into by and between the parties cannot be revoked at the option of the defendants.
D. The plaintiff, its agents, servants or employees did introduce the Hanula family or buyers of the real estate in issue to the real estate before the revokal of said exclusive agreement to sell.
4. There is insufficient evidence to warrant a finding for the defendants.
Appellant presses no argument concerning the denial of the Request for Ruling #1, and we shall thus not consider it.[3]___
*39 We are left with appellants’ single contention, that insufficient evidence warranted the finding of waiver the judge made on the aforesaid contract provision calling for thirty day written notice.
In considering Nichols’ contention here it may be helpful first to explain what this case is not about. This is no ordinary brokerage claim where “the broker is entitled to a commission only if he is the efficient or predominating cause of the sale of the property.” Bump v. Robbins, 24 Mass. App. Ct. 296, 303 (1987). Here the trial judge noted that “[although the plaintiff [Nichols] showed the house to the ultimate purchasers, no written offer of an acceptable amount was made to the defendants [the Bertes] and plaintiff did not participate in the ’.ater negotiations for the purchase . . . [The Bertes] took the house off the market in order to repair it and sold it approximately one year later at the same price as h.ad been turned down the year before.” Although services were provided by Nichols, the trial judge concluded “that the plaintiffs efforts were not the real, predominating and efficient cause of the sale.” This result is not unusual, for as Bump v. Robbins points out, brokerage contracts “by their very nature entail a high risk of noncompensation ... It is not at all uncommon for a broker to perform services for which he is not compensated.” op. cit, at p. 305. Indeed, Nichols does not appear to contend otherwise.
Instead, Nichols’ claim to a 6 percent commission is based solely on its exclusive brokerage agreement. In the “Argument” portion of Nichols’ brief,[4] the first almost nine pages discourse on the differences between bilateral and unilateral agreements. In substance, Nichols argues that the agreement here (the Form) constitutes a bilateral agreement which cannot be revoked during its term; the term was indefinite at least so long as no 30 day written notice was sent; no written notice was issued; the property was sold to someone it had introduced, and Nichols is thus entitled to a commission. Nichols also cites and appears to rely on its recent success in Samuel Nichols, Inc. v. Molway, 25 Mass. App. Ct. 913 (1987) where the Form used here was used and interpreted. Nichols’ analysis is wrong and its reliance misplaced.
The cited Bump decision explains concisely how contracts like the one here are properly characterized as unilateral or bilateral and the consequences of that characterization.
In general [the earlier cases cited] hold that if supported by consideration, an agreement for an exclusive brokerage is bilateral and irrevocable during its stated term; ifwithout consideration, it is a unilateral promise to pay a commission if the property is sold during the stated term, it may be revoked prior to a sale, and a sale by the owner would constitute revocation. Unquestionably parties are free to agree to the type of arrangement Bump alleges he had, that is, one whereby Rollins, on behalf of LRC, obligated it to pay a commission even if, during a fixed period, Robbins sold the property himself. [This would amount to an exclusive right of sale. ] Such agreements at the present time are not uncommon.
To create an exclusive brokerage, particularly one under which the owner must pay a commission if, within the fixed term, the owner himself sells the property, the parties must expressly and unambiguously indicate such an intent in the contract. Bump v. Robbins, 24 Mass. App. Ct. at 303, 304.
Here the existence of a bilateral contract which cannot be revoked during its *40 term appears conceded. At least nothing in the Bertes brief nor in the trial judges’ Report suggests otherwise. What Nichols ignores here is the explicit finding by the trial judge that the agreement had not been revoked during its term but that the term of the Nichols exclusive agreement had expired, and with it Nichols’ right to a fee. The trial judge uses these words:
Here, the defendants gave notice of termination early within the term of this agreement so that plaintiff had more than thirty day notice that the agreement would end. Even though defendants could not unilaterally cancel this agreement on August 9,1985, [i.e., during the initial ninety day period] they at least expressed their intention that the agreement would not extend beyond its original 90 day term.
The difference between what happened here and in Samuel Nichols, Inc. v. Molway, 25 Mass. App. Ct. 913 (1987) seems clear if not obvious. In Molway, within a month following the original ninety day period the seller, Molway, had sold the property to a buyer introduced to him by Nichols. Molway had in the meantime attempted by notice to Nichols to abrogate (i.e. revoke) the contract and Nichols played no part in negotiations leading to the ultimate sale. The trial judge in Molway found for Nichols — the sale had been effected in the so-called second time period to a party to whom Nichols had shown the property — and the appeals court affirmed, holding that “[u]nder the agreement the broker did not need to be the predominant cause of the sale.” Molway, id, at p. 915.
Here no sale was effected until many months after the expiration of that second ninety day period. Thereafter, i.e. following the period considered in Molway, by the very terms of its contract form thirty days after the Bertes issuance of a notice of termination all Nichols’ rights to a commission expired.[5] As noted, the trial j udge expressly found that the Bertes had long since issued such notice, and that “the circumstances suggested no bad faith on the part of the [Bertes].”
Finally, Nichols contends that no subsidiary facts found by the trial court supports the finding of a waiver and, further, that no evidence showed Marcia Nichols had authority to waive the .requirement for written notice. In both respects Nichols is wrong.
It is settled that ordinarily a written contract, before breach, may be varied by a subsequent oral agreement made on sufficient consideration. Such a subsequent agreement may enlarge the time of performance, or may vary any other form of the contract, or may discharge it altogether. Zlotnick v. McNamara, 301 Mass. 224, 225-6. (1938).
Whether an agent acts with authority “is a question of fact, ‘the answer to which depends upon the inference to be drawn from a variety of circumstances relating to the conduct of the apparent agent, and whether the circumstances are such as to warrant persons dealing with him, in the exercise of reasonable prudence and discretion, to believe he has authority to represent the alleged principal in regard to the transaction in question.’” (Citations omitted). Costonis v. Medford Housing Authority, 343 Mass. 108, 113 (1961).
Similarly, it has long been the law that “notice to, or knowledge of, an agent, in the course of the transaction in which he is acting for his principal, is constructive notice to, or knowledge of, the principal. Suit v. Woodhall, 113 Mass. 391, 395 (1873). See, too, Restatement: Agency, sec. 268, 272.
*41 Here the trial judge expressly found that following Mrs. Berte’s telephone call to Ms. Nichols within three weeks of the listing of the Berte property, Nichols “took the property off the market and performed no further work on defendant’s behalf.” Not only does Nichols thereby manifest awareness of its receipt of the oral notice from Mrs. Berte, but its response, ceasing further work after only twenty days into the contract period, more than supports the conclusion by the trial judge that Nichols thereby waived the need for any further written notice “that the agreement would not extend beyond its original 90 day term.” See Costonis v. Medford Housing Authority, 343 Mass. 108, 113 (1961) and cases cited.
Report Dismissed.

 EXCLUSIVE AGREEMENT TO SELL
No. 1(H) 19 V
TO: SAMUEL NICHOLS, INC. DATE 7-20-85
In considera! ion or your listing for sale and undertaking to find a purchaser for the real estate described on I he reverse side of this card, all of which is made a partof this agreement, on the terms and for t he price specified on t he reverse side hereof, or for a price and upon terms acceptable to me, I hereby grant and give to you t he sole and exclusive right to sell the same for a period of 90 days from this date.
If said real estate issold during the term of this contract or within ninety days after the expiration t hereof to any person or firm to whom said property was recommended, shown, or exhibited during tite term hereof, I agree to deliver to the purchaser a good and sufficient quit claim deed to the same, and it is furl her agreed that in consideration of your services, I agree to pay unto you acommission in accordance with the schedule of the Boston Real Estate Board. (V'<.
Tit is cont raet to coni inue until October 21,1985 and t hereafter until terminated by me giving unto von as agent thirty days notice in writing.
The agreement lias two lines designated “Signed,” each of which is followed by the signature of one of tlie Bettes. A line designated "witness”is signed “Samuel Nichols agent for Samuel Nichols, Inc.” Ninety days from 7-20-85 is October 19, 1985 not October 21 as noted in the Form. Obviously the syntax in the printed Form, its penned additions and the placing of signatures do not reflect a high level of concern for accuracy of detail.

 ‘A negative response to any of the links in this argument chain would, of coursé, warrant tne denial of the request. At the least, there was nothing in the evidence or the trial court’s finding concerning paragraph C of the request, the “revocation” of the contract at defendants’ option. As will be further explained below, Nichols apparently confuses revocation — vitiating a contract during its term —with termination, i.e., the expiration of the contract at the end of its term.

 Nichols’ brief runs 25 pages. It lacks any argument headings and it is not until p. 19 that the facts in this case are even touched upon.

 On the view we take of this ease it is unnecessary to consider whether absent written notice of termination, Nichols’ right to a commission could continue indefinitely. Cf., Plymouth Port, Inc. v. Smith, 26 Mass. App. Ct. 572, 575-6 (1988).