BLANCHARD LUMBER COMPANY *vs.* THOMAS C. MAHER,
trustee in bankruptcy.

THOMAS C. MAHER, trustee in bankruptcy, *vs.* BLANCHARD
LUMBER COMPANY.

Hampden.    September 18, 1924. — October 18, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Contract*, Construction.    *Evidence*, Extrinsic affecting writing.    *Sale.*
*Practice, Civil*, Estoppel by conduct of counsel at trial, Exceptions.

Where, after solicitation by a salesman, acting for a seller of lumber, and
conversations between him and a prospective buyer, the buyer orders
lumber and the salesman prepares order forms to be signed by the buyer,
himself signs the order in the name of the seller, and, before formal
acceptance thereof by his principal, there is correspondence between
the parties, the conversations of the salesman with the buyer, the order
and the correspondence between the parties all are to be considered in
determining what contract was made, and evidence is admissible to
show that in the conversations the salesman was informed that the
purpose for which the lumber was ordered required that it should be
shipped dry.

It is too late, at the argument before this court of exceptions saved by the
seller at the trial of an action by him against the buyer on the contract
above described, to raise the question whether the salesman had au-
thority from the seller, where it appears that no evidence was offered
by the plaintiff of a limitation of the authority of the salesman and
that the trial proceeded without any contention of a limitation of
authority being made and on the assumption that the salesman's
authority was conceded by the seller.

TWO ACTIONS OF CONTRACT, the first for the purchase price
of lumber alleged to have been sold to the Aker-Allen Com-
pany, Inc., the defendant's bankrupt, and the second for
damages alleged to have resulted from a breach by the seller
of that contract of sale.    Writs dated September 7 and Octo-
ber 18, 1921.

In the Superior Court, the actions were referred to an
auditor and thereafter were tried before *Irwin*, J.    Material
evidence and portions of the charge to the jury are described
in the opinion.

During the course of the trial the judge suggested to the trustee in bankruptcy that in the action in which he was plaintiff he could not recover damages both upon the theory of consequential damages upon which the case had been tried before the auditor and also upon the theory of difference between the market value of the goods ordered and that of those delivered, and thereupon the trustee in bankruptcy elected to proceed upon the latter theory.

At the close of the evidence, the Blanchard Lumber Company moved in writing that a verdict be ordered for it in the first action in accordance with the terms of the auditor's report. The motion was denied and the case was submitted to the jury. In the first action, there was a verdict for the defendant; in the second action there was a verdict for the plaintiff in the sum of $12,466.87. The Blanchard Lumber Company alleged exceptions.

*E. C. Thayer*, for the Blanchard Lumber Company.

*T. C. Maher & G. J. Scanlon*, for Maher, submitted a brief.

BRALEY, J. The first action is to recover damages for the failure of the Aker-Allen Lumber Company, Inc. to accept and pay for lumber which the plaintiff alleges it agreed to buy. The second action is to recover damages from the Blanchard Lumber Company for nonperformance of alleged contracts to deliver lumber of the kind and quality ordered. The cases, which were tried together, having been referred to an auditor, upon the coming in of his report a trial was had to a jury, which returned a verdict for the plaintiff in the second case, and a verdict for the defendant in the first case, and the cases are here on exceptions of the Blanchard Company. We shall refer to the Blanchard Company as the seller and to the Aker-Allen Company as the buyer.

The auditor having found generally in favor of the seller for $9,673.69, the report was read to the jury, and the plaintiff in the first case rested, and, the buyer having introduced evidence in defence of the first action and in support of the second action, the seller at the close of all the evidence moved for a directed verdict " in accordance with the terms of the auditor's report." The motion was denied rightly. The law of the case was for the court, and the jury were to pass

on all the evidence under suitable instructions. *Zembler* v. *Fitzgerald*, 234 Mass. 236. *Boston Box Co. Inc.* v. *Shapiro*, 249 Mass. 373.

The principal contention of the seller is that there was error in the admission of evidence because it varied the terms of the contract in writing between the parties, and that, if it had been excluded, the auditor's report would have been conclusive. The seller's salesman, one Amidon, interviewed the buyer's president at its place of business concerning the sale of lumber, and was informed that the company desired to purchase " out spruce boards." The jury would have been warranted in finding on all the evidence, that Amidon was acquainted with the nature of the buyer's business, which substantially consisted in making boxes for paper manufacturers to be used in the shipment of high grade paper, and that the buyer intended to use the boards in the manufacture of the boxes, which must be dry or the paper would deteriorate. The buyer thereupon gave five orders prepared by Amidon to which he signed the seller's name, for " 1 million feet . . . out spruce boards," dated respectively April 9, 12, 19, 21 and May 1, 1920. The orders, with the exception of the order of April 21, which contained the words " Ship dry," made no reference to the condition of the lumber. During the period covered and before any lumber was shipped, there was correspondence between the parties relating to the orders and their acceptance. The seller wrote the buyer April 13, " We have your several orders which Mr. Amidon has sent in. Of the 250,000' of boards, we can probably take 150,000, perhaps more. Will let you know later. There is very slight possibility of our being able to put through the 1 x 3 #3 but we will try." This refers only to the order of April 19, calling for " 50 M 1 x 3 up out boards." The buyer replied April 23, " That our files may be complete we wish you would advise us as soon as possible, if we are to understand that the following stock has been accepted by you on sales-slips left with us by your Mr. Amidon, — #395 April 9th, 6 cars 2 x 5 and wider Out Spruce resawed and PIS 13/16" @ $45.25 #394 April 9th, 50 M 1 x 3 and wider Out Spruce PIS 45 M Out Spruce Boards

PIS. All at 45.25 #396 April 12th 250 M feet Out Spruce Boards PIS @ $45.25 #402 April 21st 1000 M ft 1 x 4 and wider Out Spruce Boards PIS @ $45.25 All stock to be shipped when DRY. Let us have a prompt reply . . . ." The seller in an undated letter, apparently written April 29, used this language, " Again referring to your order for the one million feet of out spruce boards dressed 1 side to 13.16'. We believe that we have another party lined up to take practically all of this order. This would be for summer shipment. Please advise how late in the season we may have to clean up the order." The buyer answered, " Your letter of the 29th received, and we trust that you have made arrangements to take care of us on the Spruce Outs, and we can use these any time this year, but we prefer that all shipments be made before September 1st, if you can so arrange it." It was undisputed that the seller seasonably delivered and the buyer received " out spruce boards " called for under the orders of April 9 and 19 and May 1. Delivery under the orders of April 12 and 21 began the first part of July and continued until October. But the full quantity of lumber named in these orders was not shipped because the buyer declined to accept further shipments, claiming that the boards were unusable.

The jury under appropriate instructions could find that the contracts consisted of the statements to Amidon, and the orders. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440. *Davis* v. *Cress,* 214 Mass. 379, 382, and cases cited. There also was evidence that a representative of the seller at its place of business told the president of the buyer, who complained that the boards were " not fit for boxes to crate paper " because the lumber was " wet and green "; that the boards "were not up to what the Aker-Allen Lumber Company had asked for, what the Blanchard Lumber Company had intended to ship, and for the Aker-Allen Company to handle the boards and do the best they could with them and that Blanchard Lumber Company would reimburse them." There was further complaint that the boards as delivered were " wet and green," to which the response was, that the seller would reimburse the buyer for " any loss which

they were put to either in market price," or for drying the boards so that they could be used.   The jury could say that the representatives of the parties mutually understood that the words " Ship dry " in the order of April 21st was applicable to all the lumber.   It also could be found, even on the auditor's report, that, after receiving the orders, and before any shipment, the seller was informed by the correspondence that all stock was to be shipped when dry.   The orders, the statements to Amidon, and the correspondence, were all to be considered.   *Lyman B. Brooks Co.* v. *Wilson,* 218 Mass. 205, 208.   The evidence introduced by the buyer, to which the seller excepted, that Amidon was informed of the purpose for which the boards were bought, and that the lumber must be dry, was therefore admissible. The cases of *Stackpole* v. *Arnold,* 11 Mass. 27, *DeFriest* v. *Bradley,* 192 Mass. 346, and *Glackin* v. *Bennett,* 226 Mass. 316, are plainly distinguishable.

The Blanchard Company also excepted " to such portions of the charge as stated that the contract was evidenced by the conversations of the parties."   It is argued that the parol evidence rule is substantive law, and the question can be raised even if there was no evidence that Amidon was without authority to bind the plaintiff.   The judge gave all the plaintiff's requests, and it does not appear that his attention was directed to this defence.   The Blanchard Company, as previously said, rested its case in each action solely on the contention, that the orders alone constituted the contract, which could not be varied by extrinsic evidence. It offered no evidence of any limitation of Amidon's agency, and his ostensible powers when dealing with the buyer were on the record his real powers.   *Danforth* v. *Chandler,* 237 Mass. 518.   *Howard* v. *Haywood,* 10 Met. 408, 419, 420. *Sayles* v. *Quinn,* 196 Mass. 492.   *Howard* v. *Fall River Iron Works Co.* 203 Mass. 273, 277.   The judge moreover gave further instructions to which no exceptions were taken, as follows, ". . . it was my intention to tell you, and I now do so, that the contract entered into between the parties was made up of a memorandum signed by Mr. Amidon, agent of the defendant Blanchard Company, and conversations between

the parties, — the agreement and the talk that went with or that inspired the memorandum.  That contract was not made up in any form that — I don't understand that the contract was made with any formally drawn document, with statements in legal phraseology and of technical character, but was done in an offhand way.  Mr. Amidon comes in, meets these men, they talk about it, and the Aker-Allen Company said, ' I will take so much lumber if it is dry lumber, and what we need it for is for paper companies' box business.'  And the agent took out his memorandum book and puts down the contract.  I think that is the way the contract was made between the parties."

We have examined all the exceptions, in so far as not waived, and, finding no error, the entry must be,

*Exceptions overruled.*