Mayfrey MAYS, Administratrix of the Estate of Daniel Mays, Deceased, Plaintiff-Appellant,

v.

DEALERS TRANSIT, INC., Harold L. Flannery, Donald F. Scalise, and George Mays, Defendants-Appellees.

No. 18103.

United States Court of Appeals, Seventh Circuit.

March 9, 1971.

---

Howard J. DeTrube, Jr., on the brief, Aribert L. Young, Indianapolis, Ind., John T. Lorenz, Kightlinger, Young, Gray & Hudson, Indianapolis, Ind., for plaintiff-appellant, Mayfrey Mays, Administratrix of the Estate of Daniel Mays, Deceased.

Richard W. Yarling, Eugene O. Maley, John H. Douglas, for defendants-appellees.

Yarling, Winter, Tunnell & Lamb, Indianapolis, Ind., for defendants-appellees Donald F. Scalise and George Mays.

Smith, Maley & Douglas, Indianapolis, Ind., for defendants-appellees Dealers Transit, Inc. and Harold L. Flannery.

Before MAJOR, Senior Circuit Judge, and KERNER and PELL, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from a judgment in favor of the defendants following a jury verdict in diversity action in which the plaintiff sought to recover damages for the alleged wrongful death of her husband in a motor vehicle accident.

While there would seem to be substantial evidence supporting the verdict of the jury, the plaintiff contends that the district court committed reversible error in instructing the jury on contributory negligence and the doctrine of last clear chance.

The collision in question occurred on March 5, 1966, on a two lane highway, U.S. 41, in Indiana. Plaintiff's decedent, Daniel Mays, was a passenger in a new GMC truck driven by one Alfred Sizemore. The GMC, which consisted of only a cab and chassis without any significant weight on the rear, was proceeding north on U.S. 41 out of a series of curves.

Defendant Flannery was driving a semi-trailer car carrier south on U.S. 41 as an employee of defendant Dealers Transit.

Defendant Donald Scalise was driving a new 1966 Pontiac passenger car south on U.S. 41. The defendant George Mays and the spouses of Scalise and Mays were passengers in the Pontiac. Road and weather conditions were poor. The roadway was slick and icy. It was hazy and overcast with blowing snow.

Conflicting accounts were given of the circumstances of the accident. Plaintiff contends that as the GMC came out of a curve, the Pontiac was in the act of passing the car carrier so that both lanes were blocked. The GMC braked, slid toward and collided with the Pontiac, slid around in a counter-clockwise fashion and was hit in the right rear of the cab by the car carrier.

Defendants contend that the Pontiac had completed passing the car carrier some two minutes before the accident. Their version at trial was that as the GMC came out of the curve at an excessive speed, it went out of control on the slippery pavement and crossed the center line. Both the Pontiac and the car carrier pulled half-way off the road,

but nevertheless collided with the GMC, the sequence of impact being as claimed by plaintiff.

As a result of the impact with the car carrier, the right side of the cab of the GMC was ripped open from the rear to the front. Plaintiff's decedent died within a few minutes of the accident. He was found on the highway in front of the GMC with his right arm severed and his body and skull crushed. Human residue was found on an automobile being carried over the cab of the car carrier, being evidence that plaintiff's decedent had been thrown upward into the car carrier upon impact.

Plaintiff's principal issue on appeal deals with Instructions Numbers 3, 4 and 18, pertaining to the alleged contributory negligence of plaintiff's decedent.

Instruction Number 3 as given by the court reads as follows:

"The Defendants, Dealers Transit, Inc. and Harold L. Flannery, filed their separate Second Defenses of their Answers to the Plaintiff's Complaint.

"The essential elements and alleged facts of the elements of their Second Defenses are as follows:

"1. Whether or not, Daniel Mays was guilty of the following negligent acts of omission which conduct was contrary to that of a prudent passenger in such a motor vehicle exercising ordinary care under the same circumstances:

"A) Whether or not, Daniel Mays failed to warn Mr. Sizemore, the operator of the vehicle in which Daniel Mays was riding, of the positions and movements of Defendants' vehicles and the weather and roadway conditions?

"The Plaintiff disputes and denies the element and each of the alleged facts of the element. You will weigh the evidence and determine the element and the alleged facts of the element in accordance with these pertinent instructions.

"2. Whether or not, the alleged acts of omission of Daniel Mays as set forth in item one (1) of this instruction proximately contributed to cause the happening and the pecuniary loss claimed by the Plaintiff?

"The Plaintiff disputes and denies the element and each of the alleged facts of the element. You will weigh the evidence and determine the element and the alleged facts of the element in accordance with these pertinent instructions."

Instruction Number 4 states the similar defense of defendants Scalise and Mays and adds the further allegation:

"B) Whether or not, Daniel Mays failed to use and to fasten about his person the seat-belt which was then provided for his use in the vehicle in which he was riding?

"The Plaintiff disputes and denies the element and each of the alleged facts of the element. You will weigh the evidence and determine the element and the alleged facts of the element in accordance with these pertinent instructions.

"2. Whether or not, one or more of the alleged acts of commission and omission Daniel Mays as set forth in item 1(A), proximately contributed to cause the alleged happening and pecuniary loss claimed by the Plaintiff and/or whether or not, the alleged acts of omission of Daniel Mays as set forth in item 1(B), proximately contributed to cause the alleged pecuniary loss claimed by the Plaintiff?

"The Plaintiff disputes and denies the element and each of the alleged facts of the element. You will weigh the evidence and determine the element and the alleged facts of the element in accordance

with these pertinent instructions."

Instruction Number 18, after referring to the common law duty of exercising ordinary care on the part of the defendants, reads in part as follows:

"The Defendants, Dealers Transit, Inc., and Harold L. Flannery, charge in their Second Defenses of Answers that Daniel Mays violated such common law duty as set forth in Instruction number three (3), in item 1(A). The defendants, Donald F. Scalise and George Mays, in their Second Defenses of Answers charge that Daniel Mays violated such common law duty as set forth in Instruction number four (4), in item 1(AB). If you find that Daniel Mays violated such duty as to one or more of the alleged specifically charged breaches of duty and/or Mr. Sizemore violated such duty, then I instruct you that you would be warranted in finding that Daniel Mays as you may determine was negligent as to such specific charge or charges of negligence, and/or Alfred Sizemore was negligent. However, if you find that Alfred L. Sizemore and/or Daniel Mays did not violate any of such common law duties as alleged, then Mr. Sizemore and/or Mr. Mays were not negligent as to such specific common law charges of negligence as you may determine."

Plaintiff contends that there was no evidence to sustain a finding that her decedent was contributorily negligent and that it was therefore error to instruct on this theory.

It is not infrequent that cases involving claimed contributory negligence on the part of a passenger in a motor vehicle result in a reversal, the line of reasoning being that there was no evidence of contributory negligence, the jury was instructed on the subject and the reviewing court is unable to determine whether the jury denied recovery because of this purported issue or because of other issues. *For example,* see Gergely v. Moore, 125 Ind.App. 263, 120 N.E.2d 637 (1954).

If this were an a priori matter, some argument could be conceived against the validity of such a result. If there is absolutely no evidence of contributory negligence it is difficult to see how a jury could have thought there was and have decided the case on this issue. Under our system of jury trials, we must assume that juries understand and apply complex and difficult instructions. Otherwise there would be no real reason for reversal in the situation in which an incorrect statement of law appeared in an instruction. Further, the result in the contributory negligence-passenger situation seems to be giving credit to the jury for winnowing the truth from a mass of conflicting evidence if there is a modicum of evidence to support an issue but to say in the next breath that the jury is unable to discern what appears to be so obvious to the reviewing court, *i. e.,* a complete lack of evidence on the issue.

In the case before us the district judge beginning at 2:15 p. m. read to the jury 52 instructions, many of them of substantial length. They occupy 101 pages of the record. The jury retired to deliberate on its verdict at 4:40 p. m. Credulity is stretched to the breaking point to believe that twelve lay people exposed to this cram course in the law involved in a motor vehicle accident case could have emerged from the ordeal with any real in depth understanding of the legal conceptualism over which the judge and counsel had obviously labored diligently and mightily.

Nevertheless, the law of Indiana on the point is well-established and we must here follow it.

While not all cases involving this issue reach the *Gergely* result, because the reviewing court finds that there is sufficient evidence to take the issue to the jury, it would seem that where the evidence of contributory negligence is so minimal as to present a real question of its existence, counsel for the defendants may be well advised to pursue a policy of abstinence with regard to submitting instructions on the issue. In

the case before us, counsel chose to take this calculated risk and we must therefore determine whether in so doing they placed the instrument of reversal in the record.

On the basis of Indiana law, this court has previously recognized the "necessity for courts of appeal to place a reasonable measure of reliance upon the fairness of the trial court in exercising its discretion in [submitting the issue of contributory negligence to the jury]. The resolution of such disputes should be approached in a spirit of liberality to the end that substantial justice may be done." Kaminski v. Meadows, 264 F.2d 53, 58 (7th Cir. 1959).

Despite plaintiff's repeated assertion to the contrary, we cannot say that the record relating to the alleged contributory negligence of the decedent is so "undisputed" as to support only a finding in plaintiff's favor. Under Indiana law, the test for sufficiency to send the issue to the jury, has been put as follows:

> "If the facts are in dispute, or if reasonable men may draw different conclusions from undisputed facts, the question of negligence is one for the jury * * *." Lincoln Operating Co. v. Gillis, 232 Ind. 551, 555, 114 N.E.2d 873, 875 (1953). See Lindley v. Sink, 218 Ind. 1, 18, 30 N.E.2d 456, 462 (1940).

The Indiana law concerning the type of evidence necessary to establish a defense of contributory negligence in a case of this type is best stated in Gergely v. Moore, *supra*, 125 Ind.App. 263, 120 N.E. 2d 637, which is relied upon by plaintiff. There, plaintiff was a passenger in her husband's car. The trial court gave two instructions on contributory negligence. As in the present case, both were objected to on the ground that there was no evidence of contributory negligence. In reversing a verdict for the defendant, the Indiana Appellate Court said:

> "In order to charge [plaintiff] with a duty of giving a warning to her husband, the burden was upon [the defendant] to establish (1) either that

Mr. Gergely was not already aware of the hazardous circumstances involved or (2) that he, being aware of such hazardous circumstances, negligently operated the automobile with respect thereto *for a sufficient period of time* that (a) his negligent operation became apparent to [plaintiff] and (b) that she thereafter had an opportunity to remonstrate to him regarding his negligent conduct." *Id.* at 266–267, 120 N.E.2d at 638.

While, as is usually the situation in the contributory negligence-passenger case, the evidence of such negligence on the part of plaintiff's decedent in the case before us is not of such strength as to be highly persuasive, nevertheless, in our opinion, it was not lacking and was adequate in the record to present a jury question under either of the *Gergely* tests.

Without detailing all of the evidence on the subject, it appears that the curves in the road involved were such as to make it a hazardous stretch of highway under ideal conditions and an extremely hazardous one under the conditions prevailing at the time of the accident. The accident happened at approximately 8:30 a. m. and Sizemore had arisen at 4 o'clock, an hour to which he was unaccustomed. He did not have anything to eat after arising or prior to the accident. He left his home at about 4:30, went to Connersville and from there to Rushville where he picked up the decedent. He again stopped at Lafayette, Indiana. He was accustomed to driving a smaller truck than the recently acquired GMC vehicle. The truck consisted only of a cab without any significant weight on the rear. He passed a sign before arriving at the accident scene which warned of some miles of hazardous highway ahead but he did not remember seeing it, although he had been over the road before. The immediate area of the accident was posted at 45 miles an hour and Sizemore apparently maintained that speed as he progressed through the area of the curve. There was conflict in the testimony as to the condition of visibility

across the curves at the time of the accident although apparently one could see across the curves under normal conditions. It must be borne in mind that we must look at the evidence and the inferences therefrom in the light most favorable to the prevailing parties below.

An Indiana state trooper testified that the road in the vicinity of the accident scene was slick and that he was proceeding to the emergency scene as fast as he could operate his police car, to-wit, about 40 miles per hour. Other witnesses testified as to the poor weather conditions prevailing at the time and that the highway was icy and looked slick. Moisture from the salt on the road was freezing as fast as melting occurred. Nevertheless, Sizemore testified that the road was only wet in certain spots and he had not noticed any icy spots after he left Lafayette, nor did he note the road being icy as he proceeded through the curves prior to the accident. There is evidence that Sizemore did not believe that he had his headlights on and that he felt it was not necessary that he do so. He applied the brakes on the GMC truck in a manner never tried before, immediately before the collision.

There was introduced into evidence as an admission against the interest of the plaintiff that she had pending, in a state court, an action for damages for the wrongful death of her husband against Sizemore in which she charged that the collision and the death of the decedent was proximately caused by the negligence of Sizemore and that he failed to keep the GMC truck under proper control, failed to keep a proper lookout, failed to apply the truck brakes in time to avoid colliding with the Pontiac automobile and drove at a speed, that was greater than was reasonable and prudent under the circumstances including the slick and dangerous condition of the highway and traffic in the immediate vicinity, of 45 to 50 miles per hour.

While we are aware that plaintiff was probably here "hedging her bets" in the event of an unsuccessful outcome of the suit against the parties of the other vehicle, nevertheless, this would seem to be a judicial admission that Sizemore was negligent and that said negligence was at least a proximate cause of the accident.

The inquiry remains, of course, as to whether upon the foregoing evidence the decedent himself was negligent under either or both *Gergely* tests and that such negligence proximately contributed to or brought about the accident in question.

As we have already indicated, we feel that the evidence was ample for this purpose. On the one hand, the evidence would support at least a fair inference that Sizemore was not already aware of the hazardous circumstances involved. On the other hand, the obviousness of the hazardous conditions could well have led the jury to believe that he was aware of the hazardous conditions, despite his denial of certain specific aspects thereof, and that thereafter he negligently operated the truck for a sufficient period of time that the negligent operation became apparent to plaintiff's decedent who had an opportunity to remonstrate to him regarding the negligent conduct. In respect to the last phase of the matter, it should be noted that the signs indicating the stretch of hazardous highway which obviously related to normal conditions covered a twelve mile area and that the icy conditions were not confined to the immediate area of the accident.

The evidence is that plaintiff's decedent said nothing to Sizemore.

Ordinarily contributory negligence is a question of fact and is not to be taken from the jury. Judge Swaim, a former judge of this court, stated the matter while a judge of the Indiana Supreme Court in Cushman Motor Delivery Co. v. McCabe, Administrator, 219 Ind. 156, 174, 36 N.E.2d 769, 776 (1941) as follows:

"This court has many times said that contributory negligence is ordinarily a question of fact for the jury, and that it is only in cases where the facts are undisputed and where only

a single inference can be reasonably drawn therefrom that this court can say, as a matter of law, that a certain course of conduct does, or does not, constitute contributory negligence." (citation omitted).

Following this guideline the facts are in dispute when with certainty we are not able to say that only a single inference can be reasonably drawn therefrom. Therefore we do not as a matter of law state that the decedent's conduct could not have constituted contributory negligence.

■ We find on the record that the question whether plaintiff's decedent exercised the degree of care for his own safety required of him under Indiana law was properly submitted to the jury.

The plaintiff next contends that the court below erred in instructing the jury on the claimed contributory negligence of plaintiff's decedent in failing to fasten his seat belt.

On this appeal, plaintiff lays particular emphasis on the giving of the court's Instructions Nos. 4 and 21. Instruction No. 18 of the court also involves the seat belt defense. We have previously referred to Instructions Nos. 4 and 18 in connection with the general contributory negligence defense. The court's Instruction No. 21 reads as follows:

"The Defendants, Donald Scalise and George Mays, have charged in the Second Defense, among other things, that Daniel Mays was himself negligent in that Daniel Mays did not use the seatbelt provided him as a passenger by the vehicle's equipment.

"The General Assembly of the State of Indiana has seen fit in recent years to require all new vehicles to be equipped with seatbelts, but did not require vehicles manufactured before the date of the Act to be so equipped, and did not make it the duty of the users of the old or new vehicles to use such seatbelts. I have explained in these instructions that the Defendants raising this issue contend Daniel Mays violated his common law duty to use

ordinary care to avoid injury to himself as a reasonably prudent passenger under the same circumstances would have done. You will note that such Defendants do not contend that such conduct caused the collisions between the vehicles.

"You will weigh all of the evidence to ascertain whether or not a reasonable prudent passenger, under all of the facts and circumstances in evidence, would have been using the vehicle's seatbelt and determine in accordance with these instructions whether or not Daniel Mays was negligent.

"As explained elsewhere in these instructions, the Defendants raising this defense must also prove that Daniel Mays would not have been killed had he used the seatbelt, or stated another way, that Daniel Mays' failure to use the seatbelt proximately contributed to his death."

Initially, the defendants Scalise and George Mays contend that since the plaintiff did not object to the giving of the court's instructions relating to the seat belt issue, any error in the giving of such instructions is not reviewable. For some reason plaintiff did not respond to this issue in her reply brief and the appendix filed with this appeal does not set forth completely the objections to instructions, which objections were out of the hearing of the jury in accordance with Rule 51, Fed.R.Civ.P. Nevertheless, desiring to decide the matter on the merits if possible, we have examined the record itself and find that this particular contention of Scalise and George Mays is not supported.

It is true that at one point after some colloquy between the court and counsel for the plaintiff as to a part of the wording of Instruction No. 4, the court asked if there was now any objection to Instruction No. 4 as amended, to which counsel for the plaintiff replied that there was not. However, a reading of the entire record at this point indicates that the negative response was with ref-

erence to that portion which was changed, because in the next page of the record the court specifically refers to the fact that the plaintiff "further objected to Instruction No. 4 about the seat-belt defense, and I would overrule that * * *." There is no place in the record of any other indication that the plaintiff withdrew her objections to Instruction No. 4, which objections were quite specific to the effect that there was no evidence that the failure to use the seat belt proximately caused the decedent's death.

With regard to Instruction No. 18 there was some discussion between the court and counsel which because of its ambiguity of reference might be construed to mean that counsel for the plaintiff was objecting only to the undue emphasis in Instruction No. 18 on the negligence of Sizemore. Again, however, reading the record as a whole, it is clear that counsel did not intend to withdraw objection to No. 18. Indeed, in the objection to this instruction, counsel for the plaintiff brought the attention of the court the case of Kavanagh v. Butorac, 140 Ind.App. 139, 221 N.E.2d 824 (1966), transf. den. (1967), to which we hereinafter direct our attention.

On the other hand, the record contains nothing more which we can construe to be an objection to Instruction No. 21 which was also directed to the seat belt defense issue. Since Instruction No. 21 devoted itself exclusively to spelling out the matter of the seat belt defense, whereas both No. 4 and No. 18 concern this and other negligence issues to the extent that the seat belt defense is virtually buried in these particular instructions, it is somewhat difficult to understand why objection did not also follow as to Instruction No. 21. It is to be noted that there are some aspects of Instruction No. 21 which plaintiff might find favorable to her and desire the jury to be instructed thereon. Thus, for example, No. 21 points out that while the legislature of Indiana has by statute required all new vehicles to be equipped with seat belts, the statute did not make it the duty of the users of vehicles to use such seat belts but that the duty, if any, was of a common-law nature.

Also, the instruction emphasized that the defendants raising the seat belt issue were required to prove that Daniel Mays would not have been killed had he used the seat belt or that his failure to use the seat belt proximately contributed to his death.

■ The failure of plaintiff to object to Instruction No. 21 presents the question of whether plaintiff can now be heard to complain of the giving of the other instructions pertaining to the seat belt matter.

A troublesome aspect of the matter is whether in the interest of fairness of trial, since if No. 4 and No. 18 were bad, No. 21 would also have been, plaintiff should be allowed to preserve her error and yet have the favorable aspects of the issue to which objection was being made.

Blanchard Lumber Co. v. Maher, 250 Mass. 159, 145 N.E. 62, 64 (1924), suggests that an objection to one instruction has no merit where other instructions to the same effect were not the subject of objection.

Rule 51, Fed.R.Civ.P., is quite explicit on the matter: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

In the case before us we are not unmindful that in sequence, Instruction No. 21 was the third instruction dealing with the matter of the seat belt defense and the court had already clearly indicated its intention to let the jury consider the matter. Counsel had already explicitly stated objections to the prior instructions and no doubt it would have appeared a fruitless exercise to have again advanced the same objections.

As is pointed out in Sweeney v. United Feature Syndicate, Inc., 129 F.2d 904, 906 (2d Cir. 1942), the purpose of exceptions is to inform the trial judge of

possible errors so that he may have an opportunity to reconsider his rulings and, if necessary, correct them. In *Sweeney* the court pointed out that there was full discussion of the point raised which adequately informed the court as to what the plaintiff contended the law was and the entry of a formal exception thereafter would have been a mere technicality. The court points out that the cases construing Rule 51, Fed.R.Civ.P., strictly all involved situations where no indication was given to the judge that error would be assigned to his ruling.

We are also not unmindful of cases where notwithstanding an analysis reflected that the issue of an instruction was not properly preserved on appeal, the court nevertheless would not rest the decision solely on that basis. Johnson v. Chesapeake & Ohio Railway Co., 227 F. 2d 858, 862 (7th Cir. 1955).

In Richfield Oil Corp. v. Karseal Corp., 271 F.2d 709, 722 (9th Cir. 1959), cert. den. 361 U.S. 961, 80 S.Ct. 590, 4 L.Ed. 2d. 543 (1960), going further than some courts, the court recognized that even though objections having been stated distinctly, it would have been unlikely to have caused the court to change its previously announced position, nevertheless, "to preserve the question, on appeal, not only should the objection have been made but the grounds thereof should have been distinctly stated." (citations omitted). The court then irrespective of this pronouncement stated that while the objections were not available to the appellant on appeal, the court would still consider the question as to whether the giving of the instruction was error.

We therefore consider whether the giving of Instructions Nos. 4, 18 and 21 constituted reversible error.

At the outset we note that there is no dispute in the evidence to the effect that the GMC truck had seat belts and that the plaintiff's decedent did not fasten his seat belt around him.

While plaintiff cited Kavanagh v. Butorac, *supra,* 140 Ind.App. 139, 221 N.E. 2d 824, to the district judge in connection with her objections to the seat belt instructions, plaintiff did not mention this case in her original brief but relied rather upon an unreported case in the Northern District of Indiana, Simpson v. Penman, (N.D. of Ind. January 12, 1967), and a Wisconsin case, Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626 (1967). Defendants Scalise and George Mays did not in their answer brief refer to *Kavanagh* and it was first cited on this appeal in the plaintiff's reply brief at which time it was referred to as the leading Indiana case discussing the seat belt defense as contributory negligence. Inasmuch as we are bound by the substantive law of Indiana on this appeal, we direct our attention to that case.

In our opinion, *Kavanagh* does not make erroneous the instructions in question.

In both *Kavanagh* and in the case on appeal before us, there, of course, is no contention that the wearing of the seat belt would have prevented the accident. The emphasis here is whether or not pursuant to common-law duty the prudent man would have buckled his seat belt to have avoided injury or as was contended in *Kavanagh* that one who is injured is bound to exercise reasonable care and diligence to avoid loss or to minimize resulting damage (140 Ind.App. at 148, 221 N.E.2d 824).

The *Kavanagh* opinion was handed down late in 1966 and at that time the Indiana Appellate Court appeared to be reluctant to take what possibly seemed to be at the time a giant leap forward in this area of negligence conceptualism and to hold that the failure to wear an available seat belt is negligence as a matter of law. The court recognizes the possibility of the doctrine applying in some future date. (140 Ind.App. at 149, 221 N.E.2d 824).

On the basis of the instructions involved in this appeal, we do not find it necessary to determine whether the Indiana courts would now determine that there was sufficient basis for applying a per se negligence rule. We are not unmindful, however, of the wide-spread

informational dissemination of the last few years since the *Kavanagh* decision by police, automobile clubs and news media stressing the importance for safety of the wearing of seat belts. Legal periodicals have directed attention to this phase of the matter and have referred to scientific studies, many of which have reached print since the rendition of *Kavanagh.*

A series of articles appears in the Marquette Law Review under the generic caption, Symposium: The Seat Belt Defense In Practice, 53 Marq.L.Rev. 172 et seq. (1970). In one of these articles, The Seat Belt As A Cause of Injury (53 Marq.L.Rev. 211), the author, Dr. Richard G. Snyder, recognizes that some injuries have been attributable to the wearing of the seat belt and that the significance of a comparatively minor belt injury must be viewed in proper perspective to the more serious or fatal injuries shown to occur to unrestrained occupants. (Id. p. 224). The author states at the beginning of his article, which statement is documented by numerous footnote references to reported studies, the following at p. 211:

> "The purpose of the automotive seat belt is to provide protection to the occupant by restraining him during an accident. There is substantial evidence to show that the risk of major or fatal injury is considerably reduced when the vehicle occupant is wearing a seat belt during an accident. Reports concluding that regular seat belt usage could reduce serious and fatal injury by 35% to 90% are based upon accident investigation data from many sources. Studies comparing occupant injuries with and without seat belts have clearly shown that in similar accidents unbelted occupants are injured with significantly greater frequency and severity that (sic) belted occupants. The seat belt, properly installed *and properly worn*, still offers the single best protection available to the automotive occupant exposed to an impact." (Emphasis in the original, footnotes omitted.)

In Kavanagh v. Butorac, *supra*, the defendant had submitted the testimony of an expert on safety to the effect that the plaintiff would not have collided with a rear view mirror if his seat belt had been properly fastened. The court (140 Ind. App. at p. 150, 221 N.E.2d 824) referred to the testimony as a competent opinion. However, the case was not reversed as the trier of fact was held to be at liberty to regard favorably or to disregard the evidence.

Various other errors in connection with the seat belt aspect of the case were urged in *Kavanagh.* However, each seems basically to revolve around the question of whether offered evidence was properly the subject of introduction or, more basically, whether the court was prepared to say, which it was not, that failure to wear a seat belt could be considered contributory negligence as a matter of law insofar as avoidable consequences was concerned.

Contributory negligence, if proven, contains, of course, the dual aspects of negligence and effective contribution, i. e., proximate causation. In *Kavanagh,* the court's attention was directed in part to each of these phases but the court refused to disturb the decision of the trier of fact which could have been interpreted as negating the existence of either phase in the particular facts before the trial court.

We are controlled in this case by the substantive law of Indiana. As was stated by then Chief Judge Hastings of this court in Allstate Insurance Co. v. Charneski, 286 F.2d 238, 244 (7th Cir. 1960), the district court in a diversity case is sitting as "only another court of the state."

We do not find, however, that the law of Indiana as presently established precludes the trier of fact, assuming probative evidence, from considering first whether a reasonable man under the same or substantially similar circumstances would have worn a seat belt properly fastened and secondly, whether a

failure in this regard was a causative factor in the production of injury.

We do not find that Indiana law is established on the particular issues involved in the present phase of this appeal. It has been stated in another circuit in Legget v. Commissioner of Internal Revenue, 329 F.2d 509, 512 (2d Cir. 1964), "In finding a state's law a federal court should not follow mechanically the most recent available statement of an intermediate court but rather must determine on consideration of all relevant factors how the highest court of the state would decide the question if asked today."

While the appropriate inquiry no doubt is how the Indiana Supreme Court would decide a particular substantive issue, Auto Owners (Mutual) Insurance Company v. Stanley, 262 F.Supp. 1, 4 (N.D. Ind.1967), we are aware that substantially all of the civil cases which are appealed in Indiana are taken to the Indiana Appellate Court and most end there with the result that a substantial portion of the Indiana civil law is established by the Indiana Appellate Court. Under Indiana procedure, petition for transfer to the Indiana Supreme Court can be filed. Such petition was denied in *Kavanagh*. Because of the foregoing factors we do not pay less than full respect to the court's holding in *Kavanagh* but merely hold here that teachings of *Kavanagh* are not dispositive of the issue on the present appeal.

Where there is no controlling precedent in a diversity case, it is the district court's function to anticipate the Indiana courts' action in a like situation. Hartness v. Aldens, Inc., 301 F.2d 228 (7th Cir. 1962). It has also been indicated by this court that in order "for us to determine as best we can how the Indiana Supreme Court or the Indiana Appellate Court would decide the question, we look to various legal treatises and decisions of courts in other states." Gillam v. J. C. Penney Co., 341 F.2d 457, 463 (7th Cir. 1965). See also Putman v. Erie City Manufacturing Co., 338 F.2d 911, 917 (5th Cir. 1964), which, quoting

Professor Charles A. Wright, said that the court in the situation here involved is forced to look to " 'all available data'; for example, 'to such sources as the Restatements of Law, treatises and law review commentary, and the majority rule'," bearing in mind that the federal court must choose the rule which it believes the state court is likely in the future to adopt.

In our opinion, the issues before us involve a logical but necessary extension of well established rules pertaining to contributory negligence in the state of Indiana. On this subject the Indiana Law Encyclopedia states the following:

"Contributory negligence is the doing, or omitting to do, by an injured person, of some act or thing which a reasonably careful and prudent person would not have done or omitted to do, or, more fully stated, contributory negligence, in its legal significance, is such an act or omission on the part of plaintiff, amounting to a want of ordinary care as, concurring or co-operating with the negligent act of defendant, is a proximate cause or occasion of the injury complained of.

"The standards and tests for determining contributory negligence ordinarily are the same as those for determining negligence, but the distinction lies in that negligence involves conduct which creates an undue risk or harm to others, whereas contributory negligence involves an undue risk of harm to the person who sustains it.

"The essential elements of contributory negligence are negligence for which plaintiff is responsible and a causal connection between such negligence and the injury complained of." 21 I.L.E. Negligence § 81, at 336–337 (1959) (footnotes omitted).

"Generally the question of contributory negligence is one of fact for the jury when the evidence with respect thereto is in dispute or is conflicting, or is such that different minds may reasonably draw different conclusions or inferences as to that issue. Where

but one reasonable conclusion or inference can be drawn from the evidence, and only then, is the question of contributory negligence one of law for the court." 21 I.L.E. Negligence § 205, at 431 (1959) (footnotes omitted).

"As against third persons, others [sic] than the driver of the vehicle in which he is riding, an occupant is required to use the degree of care for his own safety that ordinarily prudent persons in like circumstances would use under the same or similar circumstances, and the failure to use care may constitute contributory negligence, barring recovery from third persons." 3 I.L.E. Automobiles § 87, at 442 (1958) (footnotes omitted).

The law pertaining to the tests of reasonable care in the case of a vehicle occupant is generally in accord with Indiana law. 65A C.J.S. Negligence § 150 (1966). *See also* Restatement, Second, Torts §§ 463–65 (1965).

■ We conclude that the wearing of seat belts is sufficiently involved in the matter of exercise of reasonable care as to be an issue of common law negligence in Indiana under the proper circumstances.

With regard to the particular seat belt defense issue, in looking at other jurisdictions, the law is probably still unsettled. However, a number of courts have indicated that the defense could be applied in a proper case. Kircher, The Seat Belt Defense-State of the Law, 53 Marq. L.Rev. 172 (1970).

As hereinbefore noted, plaintiff in her original brief cited the case of Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626 (1967). The Wisconsin Supreme Court, after a general discussion of the subject, stated the following:

"We therefore conclude that, in those cases where seat belts are available and there is evidence before the jury indicating causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard. A jury in such case could conclude that an occupant of an automobile is negligent in failing to use seat belts." 149 N.W.2d at 640.

In *Bentzler* the court concluded that there was no evidence of causation and indicated that something more must be shown than the availability and nonuse of the seat belt. With this we cannot quarrel.

The conclusion we have reached in this decision is fortified by our observation that the real thrust of the plaintiff's contention on this appeal of the seat belt defense is not that the seat belt defense is not a valid one in Indiana but rather that there was a total failure of evidence on this issue of contributory negligence and therefore the issue should not have gone to the jury. We must now, therefore, turn to the evidence in the cause before us to determine whether the proper circumstances to which we have heretofore adverted existed in the present case, i. e. whether there was a total failure of evidence on the issue and whether the situation was in dispute or was conflicting or was such that different minds might reasonably draw different conclusions or inferences as to the issue.

There was evidence from which the jury might have concluded that the decedent's side of the GMC truck was torn away and not crumpled inward by the force of the collision, that the decedent was thrown forcibly outward and upward from the seat of the GMC truck and was crushed against the car carrier, thus contributing to cause his death.

The Wisconsin Supreme Court in Bentzler v. Braun, *supra*, found some significance on the causation matter in the fact that the driver of the vehicle also failed to use an available seat belt but had only minimal injuries. In the case before us, Sizemore, the driver of the vehicle, who was also thrown out of the truck and who was not wearing his seat belt, apparently suffered no injuries of consequence. The significant difference here is that Sizemore was thrown out of the vehicle on the driver's side where there was no vehicular traffic, whereas

there was evidence from which the jury might have found that the plaintiff's decedent was thrown out and on to the large car carrier on his side of the truck cab.

While not perhaps an unarguably strong case, nevertheless, there was sufficient evidence, in our opinion, for the issue to go to the jury under the proper instructions given by the court.

█ We therefore conclude that there was no error in the giving of Instructions Nos. 4, 18 and 21.

█ Finally, plaintiff objects to Instruction No. 34 dealing with the doctrine of last clear chance. Again we note and reject defendant's contention that plaintiff did not properly preserve her objection to this instruction. The record discloses a deferential, but nonetheless thorough, presentation of plaintiff's objection to the trial court.

Plaintiff's objections to the instruction seem to grow chiefly out of its complexity. Without doubt, the instruction is complex; it is not, however, incomprehensible. The first paragraph sets out the usual law that a plaintiff who has negligently placed himself in peril may recover notwithstanding his negligence if he could not then avoid the peril while the defendants, with knowledge of the peril still could have but did not.

The second paragraph then instructed the jury that if plaintiff's decedent or Sizemore had actual knowledge of their peril and could have avoided it through ordinary care but did not and if such negligent omission of plaintiff's decedent was *a* proximate cause of the accident or such negligent omission of Sizemore was *the sole* proximate cause of the accident, then plaintiff could not recover. This, we think, amounts to no more than a statement of general principles of contributory negligence as to plaintiff's decedent and of proximate cause as between Sizemore and the defendants.

Any confusion or error which may inhere in the complexity of the instruction was cured by its third and final paragraph which concisely and clearly summarized the law of last clear chance:

"In other words, any negligent Defendant is liable to a negligent decedent if such Defendant or Defendants are aware of the decedent's peril [and] had in fact a later opportunity than the decedent by the exercise of ordinary care to avoid the happening and resulting losses."

This is a close paraphrase of the doctrine as announced by the courts of Indiana. Stallings v. Dick, 139 Ind.App. 118, 210 N.E.2d 82, 95 (1965).

From our examination of the entire record it appears to us that the plaintiff was accorded a fair trial and finding no error requiring reversal, the judgment of the district court is affirmed.

Affirmed.