The BINKLEY COMPANY,
Plaintiff, Appellant,

v.

EASTERN TANK, INC.,
Defendant, Appellee.

Nos. 87–1064, 87–1718.

United States Court of Appeals,
First Circuit.

Heard June 3, 1987.

Decided Oct. 9, 1987.

Kevin F. Moloney with whom Mitchell J. Notis, Ilana M. Quirk and Barron & Stadfeld, Boston, Mass., were on brief, for plaintiff, appellant.

David H. Gibbs, P.C. with whom Robert A. Whitney, Peabody & Brown and Lola Dickerman, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, DAVIS[*] and SELYA, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal in a diversity contract action between the Binkley Company (Binkley or appellant), a Missouri corporation, and Eastern Tank, Inc. (Eastern or appellee), a Massachusetts corporation. Binkley, the seller, claimed that Eastern had wrongly repudiated a contract for the sale of 2,178 caster assemblies at an approximate price of $200.00 each. The United States District Court for the District of Massachusetts (Skinner, J.) granted Eastern's motion for summary judgment. Binkley later filed a Motion for Reconsideration or Clarification, which the District Court denied. Binkley appeals, claiming that the District Court abused its discretion granting summary judgment against it and by denying the Motion for Reconsideration or Clarification. We affirm.

## I. *Background*

On August 29, 1984 Binkley submitted a price quotation to Eastern for the sale of 1,195 caster assemblies at a price of $238.00 each. From that date through January 1985, the dealings between the parties became a "battle of the forms" (as the District Court put it).

Binkley sent Eastern the price quotation on appellant's standard quotation form which provided:

### CONDITIONS OF SALE

This quotation does not constitute an offer of sale but is an invitation to buyer to forward a firm order by executing the order form on the reverse side hereof

and returning the buyer's quotation copy attached hereto. No contract of sale for the materials and items listed on the reverse side hereof shall be held to exist until buyer's order is accepted by seller's written acknowledgement. The contract of sale shall be subject solely to the terms and conditions of said written acknowledgement as are hereinafter set forth:

Negotiations subsequently ensued between Thomas McDowell, Binkley's regional sales manager for its Transportation Products Division, and Jay Davidson, purchasing agent for Eastern. After some negotiations, Binkley sent Eastern acknowledgement forms on December 13, 1984 reflecting appellant's acknowledgement of the newly-negotiated terms: 2,178 caster assemblies at $200.12 per unit. The form specifically provided:

The Binkley Company, as seller, acknowledges receipt of buyer's order, as shown on the reverse side hereof. The acceptance of buyer's order, however, is expressly made conditional on buyer's assent to the terms and conditions stated below and on the reverse side hereof. The Binkley Company, as seller, hereby agrees to furnish the materials and items listed on the reverse side hereof solely upon these terms and conditions.

THE BINKLEY COMPANY

By_____
    Title:
Date: _____

### TERMS AND CONDITIONS

1. The acceptance of Buyer's Order is expressly made conditional on Buyer's assent to the terms and conditions herein contained which may be additional to or different from those contained in Buyer's purchase order or any other form or document heretofore or hereafter supplied by Buyer to Seller. Buyer's assent to such terms and conditions shall be presumed to have been given unless Buyer's written objections thereto are received

[*] Of the Federal Circuit, sitting by designation.

by Seller within ten (10) days from Buyer's receipt of this acknowledgement form.

On December 19, 1984 Binkley submitted a revised quotation for the 2,178 caster assemblies containing the same terms and price as stated in the Binkley December 13 Acknowledgement Form. Although Binkley requested that Eastern execute and remit the "Buyer's Quotation Copy" of either the original or revised Binkley quotation, John J. Davidson of Eastern instead sent Binkley an Eastern purchase order dated December 7, 1984. This purchase order was for 2,178 caster assemblies at $200.12 each, for a total price of $435,861.36. The purchase order consisted of two sheets: a top white copy and a second yellow acknowledgement copy. On its face, the purchase order stated:

This purchase contract expressly limits acceptance to the terms and conditions stated herein, set forth on the reverse side hereof and any supplementary or additional terms and conditions annexed hereto or incorporated herein by reference. Any additional or different terms and conditions proposed by seller are objected to and hereby rejected.

A termination clause on the reverse side of Eastern's purchase order provided:

*Termination*

The Buyer shall have the right to terminate this contract or any part thereof at any time: (a) Without Cause—In case of termination by the Buyer of all or any part of this contract without cause, any termination claim must be submitted to the Buyer within ten (10) days after the effective date of termination.

On the face of the Eastern purchase order the acknowledgment section appeared as follows:

This Order Accepted And To Be
Delivered As Indicated
ACKNOWLEDGMENT MUST INCLUDE DELIVERY DATE
Delivery Date _____
Vendor _____
By _____ Date _____

On January 4, 1985 appellee (Eastern) received an acknowledgment copy of the

purchase order. The blanks had been filled in and the acknowledgment was signed by "T. McDowell" and dated January 2, 1985.

It was Binkley's normal business practice at that time to respond to a customer's purchase order form by sending an acknowledgement from Binkley's sales department in Warrington, Missouri. Such an acknowledgement form was also sent to Eastern in response to its purchase order.

Binkley shipped the first ten units of caster assemblies to Eastern on January 4, 1985 and followed this up by sending Eastern its standard invoice on January 7, 1985. The Binkley invoice specifically provided for the same conditions of sale as contained in Binkley's acknowledgement form. Eastern made no objections to the terms and conditions on either the invoice or on Binkley's acknowledgement form.

On February 19, 1985 Binkley received notice from Eastern to hold shipments of the caster assembly units until further notice. On October 16, 1985 Binkley wrote to Eastern and demanded assurance that Eastern would perform its contractual obligations. On October 31, 1985 Eastern notified Binkley that it was terminating the contract pursuant to the terms and conditions of the purchase order.

On November 4, 1985 Binkley's counsel presented Eastern a claim for damages due to termination of the contract.[1] Binkley sent a second letter to Eastern on January 9, 1986. No settlement was agreed upon by the parties, and Binkley filed this suit in District Court against Eastern on March 26, 1986.

II. *District Court Proceedings*

Binkley filed a two-count complaint in the District Court seeking $267,499.11 in damages from Eastern for wrongful termination of contract. Count I essentially alleged that the cancellation clause in Eastern's purchase order was not controlling because McDowell, who signed the purchase order, had no authority to bind Binkley to the Contract. Count II is said by Binkley to have asserted in the alternative

---

1. Binkley has been paid for the casters actually shipped to Eastern on January 4, 1985.

that, even if the Eastern purchase order did control the transaction between the parties, Eastern wrongly repudiated the contract under its terms.[2]

Eastern filed a Motion to Dismiss the Complaint under Fed.R.Civ.P. 12(b)(6) or, alternatively, for Summary Judgment under Fed.R.Civ.P. 56. Eastern argued that its purchase order form controlled the transaction between the parties and that under it Eastern could terminate the contract without cause. On July 31, 1986 the District Court granted Eastern's motion for summary judgment. An entry recording the granting of summary judgment and the "closing" of the case was made on the docket and notice was sent to each party.

In determining that Eastern was entitled to summary judgment, the District Court noted that Binkley's Tom McDowell had signed and returned the acknowledgement of Eastern's purchase order which contained the termination clause. Although Binkley submitted an affidavit stating that Mr. McDowell's authority extended *only* to negotiating the terms of the party's contract and not to agreeing as to its termination, the District Court ruled that Mr. McDowell was clothed with apparent authority as to termination provisions. The court reasoned that, as regional sales manager of appellant's Transportation Products Division, McDowell had been placed in a position where it would have been usual for him to have the authority to negotiate both the terms of the contract as well as to execute the writing. The District Court also relied on *Blanchard Lumber Co. v. Maher*, 250 Mass. 159, 145 N.E. 62 (1924), which held that, absent any evidence of-

fered by the principal that a salesman's agency has been limited, the salesman's ostensible powers when dealing with a buyer are his real powers. *Id.* at 163, 145 N.E. 62. The court then concluded that McDowell had the apparent authority to contract on behalf of appellant Binkley and had bound it to the terms of Eastern's cancellation clause by signing and returning the purchase order to appellee. The District Court's decision was docketed on July 31, 1986.

On August 22, 1986, Binkley filed a Motion for Reconsideration or, in the alternative, for Clarification of the court's decision granting summary judgment. The District Court denied appellant's motion without opinion or explanation on November 25, 1986. Binkley first appealed the District Court's denial of its motion, claiming that the court abused its discretion in refusing to reconsider or clarify the July 31, 1986 grant of summary judgment.[3] Binkley argued first, that the District Court resolved genuine issues of material fact, thus exceeding its authority in determining a Rule 56 summary judgment motion; and, second, that the judge virtually ignored Count II of Binkley's complaint, which Binkley claims asserted damages for termination under the terms of Eastern's purchase order.

### III. *Discussion—Motion for Reconsideration or Clarification*

■ Under Fed.R.Civ.P. 59 an order denying a motion under that provision is a final judgment and is appealable to the proper court.[4]

---

**2.** As we discuss *infra,* Count II was actually ambiguous.

**3.** Subsequently, Binkley also appealed from the court's initial grant of summary judgment against it. (No. 87–1718). There is a question whether a separate document, Fed.R.Civ.P. 58, was entered as to that summary judgment but, in any event, the later appeal was timely filed and the separate document rule may be waived, *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). Moreover, at the oral argument on the first appeal (*i.e.,* from the denial of the Motion for Reconsideration or Clarification) both parties agreed that both ap-

peals should be consolidated. Accordingly, without deciding finally the jurisdictional arguments, we consolidated both appeals and decide them together in this opinion.

**4.** Fed.R.Civ.P. 59 provides in pertinent part:
(e) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.
A party may therefore properly invoke Rule 59(e) to request a District Court to reconsider or correct errors of law. *See United States Labor Party v. Oremus,* 619 F.2d 683, 687 (7th Cir. 1980).

Under Fed.R.Civ.P. 59(e), a district court has wide discretion whether to alter or amend a judgment. *Willens v. University of Massachusetts*, 570 F.2d 403, 406 (1st Cir.1978). On appeal, this court will not overturn the District Court's decision on that matter unless the court's refusal to grant the motion was a manifest abuse of discretion. *Pagan v. American Airlines, Inc.*, 534 F.2d 990, 992–93 (1st Cir.1976). While Binkley asserts that the trial court did abuse its discretion here, we cannot agree. In a summary judgment action, such as this one, Binkley had the burden to establish the existence of a genuine issue of material fact. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Although Binkley claims that the District Court resolved issues of material fact, our review of the record convinces us that no issues of material fact were actually in dispute in this case. As the District Court recognized, the pivotal issue as to the contract between the parties revolved around whether Binkley's agent had the apparent authority to sign appellee's purchase order, thereby binding the principal to a termination clause. Apparent authority is that authority resulting "from conduct by the principal which causes a third person reasonably to believe that a particular person ... has authority to enter into negotiations or to make representations as his agent." *Hudson v. Massachusetts Property Ins. Underwriting Ass'n*, 386 Mass. 450, 457, 436 N.E.2d 155, 159 (1982). *See* Restatement (2d) Agency § 8 (1958). In applying the doctrine of apparent authority to this case, the District Court determined that McDowell, as purchasing agent, had the apparent authority to execute a contract and negotiate for a cancellation clause since the appellant (Binkley) had specifically authorized him to enter price negotiations with appellee. *See O'Leary v. Fash*, 245 Mass. 123, 124, 140 N.E. 282 (1923).

Under Massachusetts law, apparent authority is a question of fact to be inferred from the factual underpinnings of the case. *Lucey v. Hero Int'l Corp.*, 361 Mass. 569, 281 N.E.2d 266 (1972); *see also Rydman v. Dennison Mfg. Co.*, 373 Mass. 855, 366 N.E.2d 763 (1977); *Empire Eng'g Co., Inc. v. Richmond Bros., Inc.*, 35 Mass. App.Dec. 6, 10 (1966). The court can decide that an agent had apparent authority to conduct a transaction on the basis of statements, conduct, course of dealing and other manifestations of the principal's consent that would lead a third party of reasonable prudence in the business to rely on the agent's authority. The District Court in this case determined that McDowell had the apparent authority to bind Binkley to Eastern's purchase order, based on facts and circumstances that were absolutely undisputed by the parties. In particular, the court based its finding of apparent authority on the facts that (1) McDowell was the Regional Sales Manager of Binkley's Transportation Products Division; (2) McDowell's position was such that it would be usual for him to negotiate sales transactions; (3) Binkley had given McDowell the express authority to negotiate price and times of delivery. These underlying facts were actually supplied to the District Court through an affidavit of DeBlase, the executive vice president of appellant Binkley Corporation. From these undisputed facts the District Court then determined that McDowell had the apparent authority to execute Eastern's purchase order, and concluded that Binkley was thereby bound to the terms and conditions of Eastern's purchase order including the termination clause. There was no contradictory evidence other than that McDowell did not have *actual* authority to agree to Eastern's termination provision. This single fact did not create a genuine dispute as to his *apparent* authority, in view of the other facts as to his actual authority.

---

Binkley's Motion for Reconsideration or Clarification was not designated as being brought under any particular rule of civil procedure, but on appeal appellant asks this court to consider the motion under Rule 59(e). This is proper since there is no basis in the record to consider the motion under Fed.R.Civ.P. 60. *See Silk v. Sandoval*, 435 F.2d 1266, 1267–68 (1st Cir.), *cert. denied*, 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435 (1971).

■ The fact pattern in this case bears striking similarity to that in *Costonis v. Medford Hous. Auth.*, 343 Mass. 108, 176 N.E.2d 25 (1961), where the Supreme Judicial Court determined that the executive director of a public housing authority had the apparent authority to vary certain specifications in a contract on the basis of the authority that had been given him and what the authority appeared to permit him to do. *Id.* at 114-15, 176 N.E.2d at 29. The court stated:

[a]n individual in charge of a transaction ha[s] been held to have broad apparent authority. (*See Johnson v. New York, N.H. & H.R.R.*, 217 Mass. 203, 208 [104 N.E. 445]; *McKinney v. Boston & Maine R.R.*, 217 Mass. 274, 276 [104 N.E. 446]; *England Bros. Inc. v. Miller*, 274 Mass. 239 [174 N.E. 483]; cf. *Desrochers v. Brady*, 299 Mass. 269 [12 N.E.2d 861].) [a]nd what he has done in the ordinary course of transacting his principal's business and the title he has been permitted to use are admissible to prove the scope of his authority. *Segal v. Allied Muts. Liab. Ins. Co.*, 285 Mass. 106, 109 [188 N.E. 504].

*Id.* at 115, 176 N.E.2d at 29-30. On this reasoning the court held that, given the executive director's broad apparent authority, it would not be unreasonable for that individual to agree to a change in the work without a written order. As in *Costonis*, McDowell was ostensibly in charge of transactions between the parties. Given his actual express authority, coupled also with the *Blanchard* decision that a salesman's ostensible powers are his real powers, we conclude that the District Court was bound to make on summary judgment the determination that McDowell had the apparent authority to execute Eastern's purchase order and bind Binkley to a cancellation clause.

Binkley claims that the District Court committed legal error in deciding that McDowell was clothed with apparent authority in these circumstances absent a clear and direct showing that Eastern reasonably relied on McDowell's alleged authority. In this case, that argument is too thin for acceptance. First, the cases Binkley cites for support are inapposite because they involve situations where reliance by third parties was found not to have been reasonable because it was inconsistent with the circumstances of the transaction. In the current case, reasonable reliance was not an issue. The question was simply whether it would be usual for an agent such as McDowell who had the actual authority to negotiate price and delivery details to be given also the authority to negotiate other terms and execute a writing. The District Court merely looked at the circumstances as provided by the DeBlase affidavit and determined that McDowell had the apparent authority to execute the writing and bind Binkley to the terms of Eastern's purchase order. Furthermore, there was nothing in the record to indicate that Eastern had knowledge of the limitations of McDowell's limited actual authority to render the apparent authority a nullity. *See, e.g., Essex County Acceptance Corp. v. Pierce-Arrow Sales Co.*, 288 Mass. 270, 192 N.E. 604 (1934). Finally, if there was in fact some genuine issue as to whether Eastern *did* reasonably rely upon McDowell's apparent authority, it was incumbent upon Binkley on this summary judgment action to raise the issue below.

■ We also reject Binkley's assertion that the District Court ignored Count II of its complaint in granting Eastern summary judgment, and therefore abused its discretion in refusing to grant appellant's Motion for Reconsideration or Clarification. In Count II of its complaint, Binkley may have sought alternative relief against Eastern for damages possibly based upon Eastern's form in the event that Eastern's purchase order was controlling.[5] However, the Dis-

---

5. Eastern maintains that Binkley has mischaracterized its complaint and that Count II actually requests relief for breach of contract under the terms of the Binkley forms, not under the Eastern purchase order. We recognize that Count II of Binkley's complaint is very ambiguous due to the fact that Binkley incorporated by reference large sections of Count I into Count II and asked for precisely the same amount of damages for the termination claim as it did for the breach claim. The fact that in Count II Binkley asks for exactly the same amount (to the penny)

trict Court *did* address this issue by stating that "[i]f McDowell had the authority to contract for [Binkley], the purchase order would constitute the offer and the acknowledgment the acceptance by the seller. *McCarty v. Verson Allsteel Press Co.*, 89 Ill.App.3d 498, 44 Ill.Dec. 570, 579, 411 N.E.2d 936, 945 (Ill.App.1980)." No. 86–1003–S (D.Mass. (July 31, 1986)) at 6. In this portion of its opinion the District Court concluded that the Eastern purchase order containing the cancellation clause controlled, and constituted the terms of the contract. Under those terms, Eastern could cancel the contract without cause.[6] We therefore find no merit to Binkley's contention here that the District Court ignored Count II of its complaint in granting Eastern summary judgment.

### IV. *Discussion—Grant of Summary Judgment against Binkley*

For most of the reasons given in Part III, *supra,* the District Court's judgment granting summary judgment against Binkley was also correct and should be affirmed. The issues presented in the Motion for Reconsideration or Clarification apply as well as to the appeal from the adverse allowance of summary judgment and the answers are the same.

### CONCLUSION

In the circumstances of this case we cannot say that the court abused its discretion in refusing Binkley's motion under Rule 59(e). Likewise, the court did not err in granting summary judgment against Binkley, especially since there were no genuine issues of material fact presented. The rul-

ings of the District Court are therefore affirmed.

AFFIRMED.

> **Editor's Note:** The opinion of the United States Court of Appeals, First Circuit, in *Redgrave v. Boston Symphony Orchestra, Inc.,* published in the advance sheet at this citation, 831 F.2d 339–360, was withdrawn from bound volume because rehearing en banc was granted and opinion withdrawn.

---

that it seeks in Count I is very curious if Binkley were attempting to found Count II on Eastern's purchase order which contained the termination clause. United States Government purchase, construction and supply contracts are the paradigms of documents containing a clause authorizing termination by the Government for its own convenience. On such terminations the contractor does *not* automatically receive full contract breach damages but usually only (a) cost of work actually performed prior to the effective date of termination, (b) similar costs of terminating subcontracts, (c) limited profit on work done or acquired, (d) permissible settlement costs. It would be most unlikely—where

there had been, as here, no more than partial performance—for termination costs to equal full common law contract damages. *See Paul, United States Government Contracts and Subcontracts* (1964), chap. XVII.

6. Under the Eastern purchase order, Binkley's Count II was a wholly inadequate termination claim because it simply parroted Count I and made no effort to suggest the contents of a proper claim based on Eastern's right to terminate. There was absolutely no distinction between the monies sought under Count I and those under Count II.